# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT





|  |  |  |
|---|---|---|
| Ronnie Foote, | ) | |
|           Appellant, | ) | Certificate of Parties, Rulings, and Related Cases |
| | ) | |
| v. | ) | Appeal No. 13-5093 |
| | ) | |
| Ernest Moniz, Secretary, | ) | |
| U.S. Department of Energy, | ) | |
| | ) | |
|           Appellee. | ) | |

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

On July 5, 2013, Appellant certifies the following:

**A. PARTIES**

Appellant in this case is Ronnie Foote (pro se).

Appellee in this case is Ernest Moniz, Secretary of Energy

**B. RULINGS UNDER REVIEW**

Appellant seeks review of the March 5, 2013 order and memorandum opinion in Ronnie Foote v. Ernest Moniz, Secretary, U.S. Department of Energy, Civil action No. 11-1351 (CKK) which dismissed the case in its entirety (previously submitted).

**C. RELATED CASES**

The case under review was not previously before this court. Appellant is unaware of any similar cases currently pending in this court or in any other court.

**D. JOINT APPENDIX**

Appellant does not intend to utilize deferred joint appendix.

Ronnie Foote, pro se
3720 Lumar Dr.
Fort Washington, MD 20744
(505) 688-2020

Appeal No. 13-5093

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Ronnie Foote,

Plaintiff-Appellant

v.

Ernest Moniz, Secretary of Energy
(New for Stephen Chu),

Defendant-Appellee

CASE BEING CONSIDERED FOR TREATMENT PERSUANT TO RULE 34(j) OF THE
COURT'S RULE

BRIEF OF APPELLANT

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

STATEMENT OF ISSUES ........................................................................................ 1

STATEMENT OF THE CASE .................................................................................... 2

STATEMENT OF THE FACTS .................................................................................. 3

STATEMENT OF ARGUMENT ................................................................................. 3

    I.    Suzanne Garcia ............................................................................................... 4

        A.    Lies and Contradiction ................................................................... 4

        B.    The Wild Goose Chase .................................................................. 5

    II.    Dr. Seagrave ................................................................................................... 5

        A.    False Reports and Contradictions ................................................. 5

        B.    Defamation of Character ............................................................... 6

    III.    Department of Energy Reliable Under Cat's Paw Liability ........................... 7

CONCLUSION ........................................................................................................ 7

## TABLE OF AUTHORITIES

### Cases

*EEOC v. BCI Coca-cola Bottling Co. of L.A.*, 450 F.3d (10th Cir. 2006)………….....…...……...7

*Reeves v. Sanderson Plumbing Products, Inc*, 530 U.S. 133 (2000)……...……………………… 5

### Statutes and Regulations

10 CFR 712.16 : Energy-DOE security review …………………………………………………..4

Executive Order 12,968…………………………………………………………………………..1

## STATEMENT OF ISSUES

The District Court concluded that "Mr. Foote's claim would require the Court to evaluate the merits of the predictive judgment made by trained individuals and that permitting this particular claim would run afoul of Supreme Court and Circuit precedent which require courts to leave national security decisions to the discretion of the responsible agency." Memorandum Opinion, March 5, 2013, pg. 10. Agencies in turn leave national security decisions to those with the necessary expertise in protecting classified material, in my case the Department of Energy (DOE), Personnel Security Division (PSD). Executive Order 12,968, states the decision to grant or deny access to classified information must be based on judgments by appropriately trained adjudicative personnel.

The fact is, the trained Personnel Security Specialist/Adjudicators for the DOE cleared me for Human Reliability Program (HRP) with a favorable personnel security file review in Oct-Nov 2007. Yet, it was not the appropriately trained Personnel Security Division's recommendation the certyfing official went on, it was a lie from HRP management that cost me the job I once loved.

I took the proper appeals procedures in the DOE to the highest level possible, and followed the chain of command in the DOE, all the way up to the Office of Administrator (NA-1). I wrote a letter to Craig Tucker, Assistant Deputy Administrator, and Melissa Maestas, Branch Chief Human Resources, on May 28, 2008 which stated I would drop both my EEO complaints if NNSA could help me find a job in New Mexico (exhibit 1). I wrote a letter to NA-1 Mr. Thomas Paul (Tom) D'Agostino March 5, 2008 (exhibit 2) requesting assistance to rectify this injustice. I even wrote a letter to the Honorable Samuel W. Bodman, Secretary of Energy

1

himself at the time; dated March 12, 2008 (exhibit 3) requesting assistance for my complaint of discrimination. Everyone wants to protect and defend the lies and deceitfulness of Suzanne Garcia and Dr. Daniel Seagrave.  My complaint was dismissed without anyone hearing my side of the story.  Here is my story the facts:

I am not asking this court to review national security concerns, I am asking to acknowledge the fact that these two individuals, Suzanne Garcia and Dr. Daniel Seagrave, admitted to making up these lies and false security concerns then intentionally shared these false and severely damaging accusations with the selecting official for the EOS position as well as the certifying official for HRP in an effort to keep me from obtaining this position.

PSD reported that all past or present security concerns in my personnel security file have been favorably resolved: "We have received no information tending to indicate that subject has a mental or emotional condition which could cause a significant defect in his judgment or reliability." (exhibit 4); yet my employment offer was revoked because Dr. Seagrave falsely reported reliability concerns to HRP, in an effort to keep me out of the EOS position.  There is no predictive judgment involved when Suzanne Garcia and Dr. Seagrave told blatant and admitted lies about me.

Not only was my conditional offer revoked, but these false accusations still remain in my Personnel Security file today resulting in me not receiving any promotions or reassignments since. I am requesting a jury to hear my side of the story.

## STATEMENT OF THE CASE

I, Ronnie Foote, filed this lawsuit on March 28, 2013, for the Department of Energy's violation of Title VII of the Civil Rights Act of 1964, in addition to other departmental violations

and the consequences of those violations which resulted in jeopardizing my future employment prospects and defaming my character. Complaint, App. at 46-66.

## STATEMENT OF THE FACTS

At the time giving rise to this complaint, I, an African American, worked as an Emergency Operations Specialist (EOS) in the DOE's Office of Emergency Operations Support in Washington, D.C.  I was given a conditional offer of employment for an Emergency Operations Specialist position, GS-0301, in August 2007 with the National Nuclear Security Administration (NNSA), Transportation and Emergency Control Center (TECC), Albuquerque, New Mexico (the "EOS position").  I was interested in taking this position, even though it was three grades lower than my current pay grade (GS-12 to GS-9), because on August 27, 2007, US District Judge Denise Barela Shepherd, ordered a conditional discharge for my only son to live with me temporarily and to remain under my supervision to save him from incarceration.

## STATEMENT OF ARGUMENT

My employment offer for the EOS position was revoked because Suzanne Garcia and Dr. Seagrave created false security concerns and lies about my history then shared this false information with the selecting official of the EOS position, John Vukosovich.  Suzanne Garcia and Dr. Seagrave both later admitted that their accusations were false, yet the damage had already been done by them illegally allowing John Vukosovich to hear the false accusations.

I.      <u>Suzanne Garcia</u>

  A.      Lies and Contradiction

   10 CFR 712.16, under DOE security review, states: if the personnel security file review is favorable; this information *must be forwarded to the HRP certifying Official*. I received a favorable security file review from Elaine Ramirez, Personnel Security Division (PSD), for HRP certification and she reported this favorable information to Suzanne Garcia HRP management. Ms. Ramirez (PSD) testifies that Dr. Traweek (Lead Psychologist) conducted a derogatory file review of me on Feb 15, 2006. My personnel security file does not reflect any derogatory information as a result of such a review by Dr Traweek. (see exhibit 5).

   Suzanne Garcia, HRP management, lied and illegally reported *unfavorable* information to Mr. Dennis Reese (the Federal certifying official for HRP). Suzanne Garcia claimed that Elaine Ramirez from Personnel Security Division reported "a list of discrepancies" about me. She told Mr. Reese about this imaginary "list of discrepancies". This is a hurtful lie which resulted in the rescission of my employment offer. Elaine's sworn affidavit (exhibit 5) clearly states no derogatory information was reported nor any list of discrepancies was provided by her, as falsely reported by Suzanne Garcia, in addition to the fact that no reliability or security concerns were ever reported to Personnel Security Division regarding my eligibility for HRP certification.

   Suzanne Garcia then contradicted herself on November 9, 2007, 3:36PM, (exhibit 6) when she sent Dr. Seagrave an email which read: The review of the file indicated that a five year background investigation had just been completed *and there was no information of a derogatory nature*. She intentionally lied about discrepancies to the Federal certifying official for HRP yet told Dr. Seagrave something completely different.

4

*Reeves v. Sanderson Plumbing* held that a jury can consider the fact that an employer changed its story as evidence of unlawful discrimination. This certainly applies to Suzanne Garcia who blatantly lied about my personnel security file review to a Federal certifying official who denied my HRP certification because of this lie and then later changed her story when her lies were exposed.

### B.    The Wild Goose Chase

To top it all off, on November 28, 2007 Ms. Garcia sent me on a wild goose chase to change the supposed "derogatory information" in my military records in order to be reconsidered for HRP and employment in NNSA New Mexico. There was no derogatory information in my military records to change.  I assumed there must have been an error so I went to get proof from my military records, while the whole time Ms. Garcia knew there was nothing to change. While I was on this wild goose chase, another applicant, white, with no HRP certification, and less experience, was hired.

## II.    Dr. Seagrave

### A.    False Reports and Contradictions

I have an impressive Government background consisting of over 28 years of Top Secret clearance responsibilities with zero security infraction. The EOS position was contingent upon certification into the Human Reliability Program (HRP).  I had already been previously certified for HRP twice at NNSA so I knew the drill.   To receive HRP certification, two of the requirements are to pass a psychological evaluation and receive a favorable HRP security file review from Personnel Security Division (PSD).  Dr. Daniel Seagrave, a psychologist for NNSA administered my psychological interviews.  At the conclusion of these interviews, Dr. Seagrave

claimed that I should not be recommended for HRP. Dr. Seagrave not only made up lies about my answers and history but when confronted with his false and misleading accusations, he began to contradict himself. In one instance he claimed I received *acceptable* performance evaluation reports and then in another he reported *irresponsible* work performance as a significant concern (Exhibit 7). He changed his story.

In the interview process Dr. Seagrave asked me a series of questions all of which I answered truthfully yet my Personnel Security File does not reflect the truth. Dr. Seagrave reported that I had lied about drug use, I was deceitful, inconsistent with my answers, and I intentionally misrepresented my background to obtain a security clearance and gain employment with the DOE.

B.    Defamation of Character

One of the accusations was of rape and was by far the most insulting and humiliating to me. Dr. Seagrave claimed that not only had I had an affair with a married woman but that I also had been charged with attempted rape, and that he had evidence to prove it. He discussed it during a crucial teleconference with Suzanne Garcia and John Vukosovich, the selecting official. He later admitted to knowing that this rape accusation was false on his affidavit ROI, F-3 pg. 3 (exhibit 8) but by the time he admitted the truth it was too late, the position had been filled. This is concrete and lasting damage that will always be imbedded in their minds about me, a rapist; defamation of character at its finest by Dr. Seagrave. Despite him admitting his lie, this injustice still remains inside my Personnel Security File to this day for others to view. People consult this file when I apply for promotions and future job reassignments. Prior to the false report, I was promoted two times in a matter of 3 short years. Yet, over 5 years, after the false report of Dr.

6

Seagrave, I have not been promoted or reassigned because of this negative suitability

determination.  The damage is clearly evident.

III.    <u>Department of Energy Reliable Under Cat's Paw Liability</u>

The Supreme Court requires courts to leave national security decisions to the discretion

of the responsible agency, which in my case is the Department of Energy.  In the discrimination

context, Cat's Paw refers to a situation in which a bias subordinate, who lacks decision making

power (i.e. Dr. Seagrave and Suzanne Garcia), uses the formal decision makers (i.e. Mr. Reese

and John Vukosovich) as a dupe in a deliberate scheme to trigger discriminatory actions. *EEOC*

*v. BCI Coca-cola Bottling Co. of L.A.*, 450 F.3d (10th Cir. 2006) affirms the employer should be

held responsible for discrimination results whenever its decision-makers take adverse action

against an employee based on animus-tinged reports of a bias employee.

The Tenth Circuit requires evidence that the biased subordinate caused the adverse

employment action through his or her discriminatory recommendation, report or actions.  Dr.

Seagrave and Suzanne Garcia most certainly did cause adverse employment actions for me by

fabricating negative facts and misleading statements then knowingly reported these false and

negative statements to the selecting official for the EOS position and HRP certifying official.

CONCLUSION

Contrary to what the defendant claims, I am not asking this court to get involved with

security decisions at the Department of Energy. I am only asking this court to recognize that

racism and prejudice still exists in our great nation.  Sometimes it is blatant and other times it is

discreet, hiding under the guise of National Security.  Suzanne Garcia and Dr. Seagrave

intentionally fabricated false security concerns and damaging accusations against me, told the

selecting official for the EOS position as well as the certifying official for HRP lies, knowing full

7

well that their lies would result in my employment offer being rescinded and me not being
selected again. Once confronted with their lies they changed their stories.  I have been fighting
for justice from the Department of Energy for over 5 years 7 months. I only hope that this Court
will recognize the injustice and the horrible consequences it has had on my future employment
with the government. I request relief: Immediate retirement from the Department with gross pay
from 2012 W-2 form and 1 million U.S. dollars (reduction from previous claim).

Ronnie Foote

8

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Appellant Brief was served on Appellee and counsel by First-Class mail, postage paid to:

> Charles W. Scarborough
> U.S. Department of Justice
> 950 Pennsylvania Ave, NW
> Washington, D.C. 20530

> Ernest Moniz
> Secretary, U.S. Department of Energy
> 1000 Independence Ave., S.W.
> Washington, D.C. 20585

On this day July 5, 2013.

> RONNIE FOOTE, pro se
> 3720 Lumar Dr.
> Fort Washington, MD 20744
> (505) 688-2020

# Exhibit 1




Department of Energy
National Nuclear Security Administration
Service Center
P. O. Box 5400
Albuquerque, NM 87185

May 28, 2008

✕  Mr. Craig Tucker
Assistant Deputy Administrator, Office of Secure Transportation (OST)

✕  Melissa Maestas
Branch Chief, Human Resources (OST)

All:

✕  I have expressed interest in employment with NNSA Service Center, Albuquerque New Mexico.
I would be willing to drop both Equal Employment Opportunity (EEO) complaints I have filed
against the Office of Secure Transportation if you could assist me with securing a position with
NNSA Service Center.

Please do not hesitate to contact me at (505) 688-2020 should you need more information.
Thank You.

Sincerely,

Mr. Ronnie Foote
Emergency Operations Specialist
Office of Emergency Operations Support (NA-44.1)
Office of Emergency Operations (NA-40)
U.S. Department of Energy
Forrestal Building
1000 Independence Ave S.W.
Washington D.C. 20585

CC:
Karen Boardman
Director, NNSA Service Center

Debbie Parrish
Deputy EEO and Diversity Program Manager
NNSA Service Center

# Exhibit 2



**Department of Energy**
**National Nuclear Security Administration**
**Service Center**
**P. O. Box 5400**
**Albuquerque, NM 87185**



March 5, 2008

Mr. Thomas Paul (Tom) D'Agostino
Office of Administrator (NA-1)
U.S. Department of Energy
Forrestal Building
1000 Independence Ave S.W.
Washington D.C. 20026

Sir:

I respectfully request your assistance to correct an injustice that has been brought upon me by Dr. John H. Sloan, Site Occupational Medical Director (SOMD), DOE/NNSA/OST Medical Services Contract, Manzano Medical Group, Albuquerque, New Mexico, 87102 and two of his staff members Dr. Daniel Seagrave, Alternate Lead Psychologist for Human Reliability Program (HRP) and Dr. Anthony C. Traweek, Lead Psychologist for (HRP).

Due to their decision, I have been denied two positions at DOE, Office of Secure Transportation (OST), Transportation and Emergency Control Center (TECC) NNSA, Albuquerque, New Mexico. As a result of Dr. Seagrave's prejudiced psychological evaluation report dated 11/16/2007. I am perplexed that, Dr. Seagrave did not recommend me for (HRP) certification, rendering me ineligible for the Emergency Operations Specialist (EOS) position which I had accepted a conditional offer of employment on 9/19/2007.

Current NNSA managers presume evaluation reports to be an accurate assessment when rendered. When confronted with evidence to the contrary, they must deal with Psychologists who abuse the evaluation process.

Presently there exists no appeal process for new HRP candidates such as myself. Although, I had been HRP recommended on two occasions during 2004-2006 by Dr. Anthony C. Traweek, Lead Psychologist for HRP. The position I applied for is the same position I held when I previously worked for DOE/OST.

On 02/20/08, I participated in a NNSA/OST Equal Employment Opportunity (EEO) mediation session in Albuquerque, New Mexico. During this mediation session, I requested my HRP medical records to be purged of this unfair evaluation report. And that I am assigned an EOS position in the TECC, NNSA, Albuquerque New Mexico. This EOS position was available at the time of the mediation session on 02/20/08.

On 3/3/08 I was told by John Vukosovich, Chief Mission Support Branch, NNSA, OST, who was at the mediation session, that, although I did make the certification list for the EOS position

Mr. Vukosovich did not select me "Based on previous information from HRP." I strongly believe Mr. Vukosovich first learned of this false and biased information on 11/28/07 during my telephone conference post- psychological evaluation with Dr. Seagrave dated 11/16/07.

Dr. Seagrave violated Federal Register/Vol.69, No.15 Para 712.16 which read: Medical personnel may not share any information obtained from the personnel security file with anyone who is not an HRP certifying official. Mr. John Vukosovich is not an HRP certifying official and should not have been a participant in my telephone conference post-psychological evaluation.

I feel this direct violation of Federal rules and regulations by Dr. Daniel Seagrave combined with various written false statements, in my opinion were made with malice intent of keeping me from employment of any HRP position in New Mexico.

Allowing this report to remain in my records is a clear injustice; I am requesting your assistance to rectify this injustice.

I appreciate your time and patience in looking into this matter. Please do not hesitate to contact me at (505) 688-2020 should you need more information. Thank You.

Sincerely,

*Ronnie Foote*

Mr. Ronnie Foote
Emergency Operations Specialist
U.S. Department of Energy
Forrestal Building
Office of Emergency Operations Support (NA-44.1)
Office of Emergency Operations (NA-40)
1000 Independence Ave S.W.
Washington D.C. 20026

Exhibit 3



**Department of Energy**
**National Nuclear Security Administration**
**Service Center**
**P. O. Box 5400**
**Albuquerque, NM 87185**



✳ March 12, 2008

Honorable Samuel W. Bodman
Secretary of Energy
Forrestal Building
1000 Independence Ave S.W.
Washington D.C. 20585

Sir:

I respectfully request your assistance. You are listed as an official, authorized to receive discrimination complaints. I have submitted my complaint on the attached form, DOE-F1600.1, "Complaint of Discrimination."

I have tried unsuccessfully to rectify this injustice through NNSA Equal Employment Opportunity (EEO) Mediation Program, Albuquerque, New Mexico on 02/20/2008.

I appreciate your time and assistance in researching this matter. Pease do not hesitate to contact me at (505) 688-2020 should you need more information. Thank You.

Sincerely,

*Ronnie Foote*

Mr. Ronnie Foote
Emergency Operations Specialist
Office of Emergency Operations Support (NA-44.1)
Office of Emergency Operations (NA-40)
U.S. Department of Energy
Forrestal Building
1000 Independence Ave S.W.
Washington D.C. 20585

CC:
Ms Yolanda Giron
EEO and Diversity Program Manager
NNSA Service Center
P.O. Box 5400
Albuquerque, NM 87185-5400

# Exhibit 4

## U.S. DEPARTMENT OF ENERGY
### CASE EVALUATION FOR SECURITY CLEARANCE

| Name | DOE No. | Type Clearance |
|------|---------|----------------|
| FOOTE,  Ronnie  NMN | AB 233571 | Q |

| Employer | Sponsor | Position |
|----------|---------|----------|
| DOE, Washington, D.C. | NA-44.1 | Emerg. Oper. Spec. |

### Summary of Security Concerns:

Guideline E / 10 CFR 710.8(l)   Subject is a 46 year old, divorced male, who is employed by DOE as an emergency operations specialist in Washington, D.C. and has held a DOE "Q" security clearance since 10/16/01.

On 10/31/07 DOE OHPSO received a completed FBI SSBI-PR concerning subject.   The investigative report, which contained source interviews at subject's present location of DOE employment in Washington, D.C. as well as at his previous DOE work site in Albuquerque, contained only one piece of derogatory information from a security point of view and that involved the arrests of subject's son at Albuquerque and whether subject himself was aware of the arrests and could be blackmailed.

On 3/18/08 OHPSO received a packet of employment psychological evaluation reports for the DOE/NNSA/OST Human Reliability Program (HSP) in Albuquerque.  These reports showed that subject had been favorably evaluated for HRP Certification in 8/04, 11/05, and again in 2/06, which was prior to and during the period while subject was the incumbent in the Albuquerque position.  However, although subject was apparently evaluated using the same standards as applied to him in the previous three years, he was not recommended for HRP certification in 11/07 by a different psychologist than the one who evaluated him in the three earlier sessions.  Apparently subject in 11/07, who had been employed by DOE in Washington, D.C. for about two years, had decided to apply to resume his former duties at DOE, Albuquerque.



It should be noted that it was mentioned very prominently in the 11/07 HSP evaluation report that subject's former supervisor at Albuquerque did not wish to rehire subject in his old position. How much this obviously negative reaction to his former subordinate might have influenced, if at all, the outcome of subject's last psychological evaluation is *undetermined*.



Also received by OHPSO on or about 3/18/08 was a copy of a 3/5/08 letter from subject directed to Thomas P. D'Agostino in NA-1 challenging the honesty and integrity of the psychologist who evaluated him in 11/07.

Subject was interviewed in a PSI on 6/30/08 by a representative of DOE's OHPSO at Germantown to address the potential security issue set forth on the CES of 11/1/07.

When asked whether he was aware of any recent arrests of any

| OFFICIAL USE ONLY | PRIVACY ACT INFORMATION |
|---|---|
| Contains information which <u>may</u> be exempt from public release under the Freedom of Information Act (5 U.S.C. 552), exemption number(s)  6.  Approval by the Department of Energy prior to public release is required. | The information contained hereon is subject to the provisions of the Privacy Act of 1974 and must be protected  from unauthorized disclosure |

Reviewed by: _____    Date: 7/28/08

## U.S. DEPARTMENT OF ENERGY
## CASE EVALUATION FOR SECURITY CLEARANCE

| Name | | | DOE No. | Type Clearance |
|------|---|---|---------|----------------|
| FOOTE, | Ronnie | NMN | AB 233571 | Q |

immediate family members, subject stated that he was very much aware of his son having been arrested back in 2006 and, in fact, subject was involved in the related court proceedings via telephone hookup.

Subject added that neither this arrest nor anything else in his background could be used to compel him to release classified information or to act in any other way contrary to the best interests of our national security.

**Analysis and Recommendation (include signature & date at end of recommendation):**

The only potential security issue that evolved from the 8/07 FBI SSBI-PR was addressed and easily resolved in the 6/30/08 PSI. The negative HSP evaluation done in 2007 was a suitability evaluation done for a position at Albuquerque, not at DOE Headquarters. HSP evaluations are not used by DOE Headquarters.

We have received no information even tending to indicate that subject drinks alcohol habitually to excess or has a mental or emotional condition which could cause a significant defect in his judgment or reliability. We have no evidence that subject is a threat to himself or others. All past or present security issues in subject's PSF have been favorably resolved. Thus recommend we continue subject's DOE "Q" security clearance. *P.E. Newton* 7/28/08

**Second Tier Review (include signature & date at end of review):**

*Concur w/ recommendation to continue "Q" clearance. Security concern appeared to have been favorably resolved during interview.*

*Ann Wyatt*

**Additional Review (if necessary, include signature & date at end of review):**

# Exhibit 5

## AFFIDAVIT

Complainant: Ronnie Foote

State of: New Mexico

County of: Bernalillo

I, Elaine Ramirez, a Hispanic light brown female, employed by the U.S. Department of Energy ("DOE"), National Nuclear Security Administration ("NNSA"), Office of Federal Services, Personnel Security Department, Processing Management Division, located at PO Box 5400 Albuquerque, New Mexico 87185, as a Team Leader, GS-13, since October 1996 , do solemnly affirm:

My alleged involvement in the complaint has been explained to me.  I recognize my obligation to cooperate in the conduct of the investigation of an EEO complaint of discrimination and to furnish testimony under oath or affirmation without a pledge of confidence, in accordance with the Department of Energy and EEOC rules and regulations.  I have been advised of my right to make any changes in my statement prepared by the Investigator.  I have also been advised of my right to receive a copy of my statement, subsequent to my oath.  I am aware that any portions of / or my complete affidavit may be provided to any official alleged to have committed any discriminatory act or other improprieties.  The following represents my response to the issues/allegations per my involvement.

Page 1 of 3                 Affidavit of Elaine Ramirez                 Initials: _ER_

04/07/2009  17:46    5058455433         PSD PROGRAMS TEAM              PAGE  02/04

1.       Ronnie Foote formerly worked as an Emergency Operations Specialist ("EOS") in
Albuquerque, New Mexico.  On or about February 9, 2006, Mr. Foote transferred to a
similar position located at NNSA headquarters in Washington, DC.  I am aware that Mr.
Foote applied for an EOS position in Albuquerque, New Mexico in late 2007.   In
connection with Mr. Foote's application, Suzanne Garcia requested that I conduct a "file
read" to determine if Mr. Foote's personnel security file contained any new derogatory
information since Mr. Foote's transfer to Washington, DC.  I contacted Sherry Henson in
Washington, DC, and Ms. Henson indicated that Mr. Foote's file did not reflect any new 
derogatory information since Mr. Foote transferred to Washington, DC.

2.       I did not provide a "notice of discrepancies" or any other derogatory information
in connection with Mr. Foote's application for the EOS position that is the subject of Mr.
Foote's complaint.  I am not aware of the materials reviewed by Dr. Daniel Seagrave in
making his recommendation that Mr. Foote not receive HRP certification.  It has been
reported to me that Dr. Anthony Traweek conducted a derogatory file review of Mr.
Foote on February 15, 2006, but I have no knowledge of that review.  Mr. Foote's
personnel security file does not reflect any derogatory information as a result of such a
review by Dr. Traweek.  Any derogatory information that Dr. Traweek identified should
have been shared with the Personnel Security Department.

Page 2 of 3                    Affidavit of Elaine Ramirez          Initials: 

I have read this statement consisting of three (3) pages, and it is true and correct. I have signed or initialed each page. I have been given an opportunity to make any corrections or additions, which I have initialed. I understand that the information I have given is not to be considered confidential; that it may be shown to the interested parties; and that it may be used in evidence.

*Elaine Ramirez*

_____
Signature of Affiant

Elaine Ramirez
Subscribed and (sworn to) _____ (affirmed) _____ at
NNSA, Service Center _____, this 7th day of April, 2009.

OFFICIAL SEAL
DAWNDEE CANTU
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 4/23/2009

*DawnDee Cantu*

Exhibit 6

## Seagrave, Daniel

| | |
|---|---|
| **From:** | Seagrave, Daniel |
| **Sent:** | Tuesday, November 13, 2007 4:36 PM |
| **To:** | Garcia, Suzanne |
| **Subject:** | RE: Foote |

Suzanne,

In drafting Mr. Foote's HRP psychological report, I realized it would be helpful to obtain documentation about his work performance, attitude, and other potential issues when he worked for the TECC from 2003-06.

Would you please request from John Vukosovich any prior work records on Mr. Foote (e.g., training records, performance evaluations, disciplinary actions, etc.)? I would like to review these records (if any) before finalizing my report.

Thanks,

Dan

---

**From:** Garcia, Suzanne
**Sent:** Friday, November 09, 2007 3:36 PM
**To:** Seagrave, Daniel
**Subject:** Foote

Dan,

On November 1, 2007, I received a call from Elaine Ramirez, Team Leader, PSD indicating that she received a call from Personnel Security at HQ's. It appears that Stevie Grimes had given someone at HQ's permission to share telephonically, the contents of Ronnie Foot's personnel security file with Elaine.

The review of the file indicated that a 5 year background investigation had just been completed and there was no information of a derogatory nature.

Please contact me if I can be of further assistance.

Thank you.

Suzanne

*Suzanne Garcia*
***HRP Management Official***
*Office of Secure Transportation*
*Human Reliability and*
*Resources Division*
*Phone: (505) 845-5356*
*Fax: (505) 284-7065*
*Pager: 1-888-308-4062*

11/13/2007

# Exhibit 7

In his discussion with POIO, Mr. Foote expressed his concerns and referred to or showed us documents which he believed supported his contentions. In general, he declined to provide us with those documents. His presentation generally addressed the alternate lead psychologist's summary of significant concerns as indicated above. The following is a discussion of Mr. Foote's specific concerns.

*Mr. Foote's Perspective: Irresponsible Work Performance*



In his report, the alternate lead psychologist characterized Mr. Foote as having irresponsible work performance based largely on information the alternate lead psychologist obtained from Mr. Foote's former supervisor in the TECC. This supervisor indicated that he had some concerns with Mr. Foote's performance and would not want to rehire him as a result.

Mr. Foote told POIO that all of his work performance reports during his previous tenure were favorable, as were his HRP management evaluations during this period. He also took issue with the lead psychologist's assessment of November 16, 2007, in which he stated that "(Mr. Foote's) overall behavioral orientation portends problems with team work…" Mr. Foote told POIO that his performance evaluations with regard to teamwork were consistently very high, which indicates that this conclusion is not correct.

Mr. Foote also objected to the report's inclusion and characterization of comments by his former supervisor in the TECC. Mr. Foote told POIO that in a subsequent conversation he had with this former supervisor, that this supervisor had said that he didn't remember telling the alternate lead psychologist that he would not hire Mr. Foote back (due to previous incidents he had with Mr. Foote). One of these incidents involved challenging directives from a temporary shift supervisor, one involved wearing no shoes in the TECC, and one involved refusing to help with cleaning up the TECC on weekends when there was no custodial service. Mr. Foote said the incident regarding refusing to clean up the TECC never happened and the other two were minor, isolated incidents which should not have been included in a psychological evaluation.

*Irresponsible Work Performance (POIO Analysis)*

The fact that Mr. Foote had acceptable work performance reports during his tenure at the TECC was known to the alternate lead psychologist and included in the report (at page three, paragraph two, "Even though Mr. Foote received acceptable performance evaluations, and he did not exhibit trustworthiness concerns, [the former supervisor] stated that he did not want to rehire Mr. Foote as an EOS because of the above noted problems with argumentativeness, rigidity, noncompliance, and a negative attitude.")

POIO interviewed the former supervisor to ascertain his perspective on Mr. Foote. The former supervisor said that when Mr. Foote spoke to him about what

# Exhibit 8

Intent to Rape. The Air Force investigation showed the attempted rape charge to be false, but contained Mr. Foote's admission that Mr. Foote engaged in consensual sex with the married woman. When I questioned Mr. Foote about the matter, he denied that he had ever been charged with attempted rape or that he had engaged in consensual sex with this married woman.

4.      Mr. Foote was also vague and evasive in answering my questions about Mr. Foote's prior drug use. Mr. Foote's reports of marijuana use varied wildly across different sources in Mr. Foote's records. In 1980, Mr. Foote claimed he once used marijuana. In 1986, Mr. Foote reported that he had used marijuana once a weekend for approximately a two-year period. In 2001, Mr. Foote denied any history of drug use. When I questioned Mr. Foote about how frequently Mr. Foote had used marijuana, Mr. Foote said he did not remember. I asked Mr. Foote for his "best guess," but Mr. Foote refused to provide an estimate. I confronted Mr. Foote with the information of record reflecting the variances in Mr. Foote's prior responses to questions about marijuana usage, and Mr. Foote claimed that the record was inaccurate.

5.      I also questioned Mr. Foote regarding any history of extra marital affairs, but Mr. Foote refused to answer, and then stated that the answer was "nobody's business." I explained the relevance of the question to the HRP certification process, but Mr. Foote still refused to answer. Mr. Foote then asked me if I had ever had an extra marital affair. I responded that the answer was none of Mr. Foote's business, but I advised Mr. Foote that I would answer the question if I was seeking HRP certification. Mr. Foote