**[CASE BEING CONSIDERED FOR TREATMENT PURSUANT
TO RULE 34(j) OF THE COURT'S RULES]**

No. 13-5093

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

RONNIE FOOTE,

Plaintiff-Appellant,

v.

ERNEST MONIZ, SECRETARY OF ENERGY,

Defendant-Appellee.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————

**BRIEF FOR THE FEDERAL APPELLEE**

———————————

STUART F. DELERY
*Acting Assistant Attorney General*
RONALD MACHEN
*United States Attorney*

MARLEIGH D. DOVER
*(*202) 514-3511
CHARLES W.SCARBOROUGH
(202) 514-1927
*Attorneys, Appellate Staff*
*Civil Division*
*United States Department of Justice*
*950 Pennsylvania Ave., N.W., Rm. 7244*
*Washington, D.C. 20530-0001*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned certifies as follows:

**A.    Parties and Amici**.

Plaintiff-appellant is Ronnie Foote.  Defendant-appellee is Ernest Moniz, Secretary of the Department of Energy.  There are currently no *amici* in this case.

**B.    Rulings Under Review.**

Plaintiff seeks review of a March 5, 2013 memorandum opinion and order issued by the Hon. Colleen Kollar-Kotelly in Civ. No. 11-1351 (D.D.C.), granting the government's motion for judgment on the pleadings.

**Related Cases.**

Counsel is not aware of any related cases in this Court or any other court.

s/Charles W. Scarborough
Charles W. Scarborough
Attorney for Appellee

# GLOSSARY

DOE          Department of Energy

EEOC         Equal Employment Opportunity Commission

EOS          Emergency Operations Specialist

HRP          Human Reliability Program

NNSA         National Nuclear Security Administration

# TABLE OF CONTENTS

**<u>Page</u>**

CERTIFICATE AS TO PARTIES, RULINGS,
    AND RELATED CASES

GLOSSARY

STATEMENT OF JURISDICTION ................................................................... 1

STATEMENT OF THE ISSUE ........................................................................ 1

RELEVANT STATUTES AND REGULATIONS ...................................................... 2

STATEMENT OF THE CASE ......................................................................... 2

STATEMENT OF FACTS ............................................................................ 3

    A.    REGULATORY BACKGROUND ....................................................... 3

    B.    PROCEEDINGS IN THIS CASE .......................................................... 5

SUMMARY OF ARGUMENT ....................................................................... 11

STANDARD OF REVIEW ........................................................................... 13

ARGUMENT .......................................................................................... 13

    THE DISTRICT COURT CORRECTLY HELD THAT
    PLAINTIFF'S  CHALLENGE TO THE DENIAL OF
    HRP CERTIFICATION IS NOT JUSTICIABLE
    UNDER *EGAN* ....................................................................... 13

    A.    *Egan's* Bar On Judicial Review Extends To
        Decisions By The Executive Branch Denying
        Clearance To Occupy Sensitive Positions With
        Access To Nuclear Materials ....................................................... 13

    B.    No Basis Exists For Reversing The Judgment
        Below ............................................................................. 17

i

CONCLUSION ................................................................................................ 21

CERTIFICATE OF COMPLIANCE WITH FEDERAL
        RULE OF APPELLATE PROCEDURE 32(A)

CERTIFICATE OF SERVICE

ADDENDUM

## TABLE OF AUTHORITIES

**Cases**:

*Beattie v. Boeing Co.*, 43 F.3d 559 (10th Cir. 1991).............................................. 17

*Becerra v. Dalton*, 94 F.3d 145 (4th Cir. 1996).................................................. 17

*Bennett v. Chertoff*, 425 F.3d 999
        (D.C. Cir. 2005) ..........................................................10, 12, 14, 15, 17, 19

*Brazil v. Dep't of the Navy*, 66 F.3d 193 (9th Cir. 1995)......................................12, 17, 20

*Catawba Cnty., N.C. v. EPA*, 571 F.3d 20 (D.C.Cir.2009)............................................. 18

*Cline v. BWXT Y-12, LLC*, 521 F.3d 507 (6th Cir. 2008)................................................ 4

*Department of Navy v. Egan*, 484 U.S. 518 (1988) ....................................1-3, 8, 11, 13, 20

*El-Ganayni v. U.S. Dep't of Energy*, 591 F.3d 176 (3d Cir. 2010).................................... 17

*National Ass'n of Mfrs. v. Taylor*, 582 F.3d 1 (D.C. Cir. 2009) ...................................... 13

*Oryszak v. Sullivan*, 576 F.3d 522 .................................................................. 1, 15

*Rattigan v. Holder*, 643 F.3d 975 (D.C. Cir. 2011) ................................................... 15, 16

*Rattigan v. Holder*, 689 F.3d 764 (D.C. Cir. 2012) ..................................................8, 15, 16

*Authorities chiefly relied upon are marked with an asterisk.*

ii

*Ryan v. Reno*, 168 F.3d 520 (D.C. Cir. 1999) ............................................ 14, 19

*Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169 (D.C. Cir. 2006) ........................ 5

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154
    (D.C.Cir.2002) ....................................................................................... 18

## Statutes:

28 U.S.C. § 1291 ....................................................................................... 1
28 U.S.C. § 1331 ....................................................................................... 1

50 U.S.C. § 2401 ....................................................................................... 5

## Rules:

Fed. R. App. P. 4(a)(1) ............................................................................. 1
Fed. R. Civ. P. 12(c) ................................................................................. 2

## Regulations:

10 C.F.R. Part 712 ................................................................................ 2, 3, 4
10 C.F.R. § 712 .............................................................................. 1, 2, 9, 20
10 C.F.R. § 712.1 ...................................................................................... 3
10 C.F.R. § 712.10 ................................................................................ 4, 19
10 C.F.R. § 712.11 .................................................................................. 4, 5
10 C.F.R. § 712.11(a)(1) ....................................................................... 4, 15
10 C.F.R. § 712.11(a)(2)-(10) ................................................................... 4
10 C.F.R. § 712.17 .................................................................................... 5

## Miscellaneous:

Exec. Order 10,450 ........................................................................... 3, 4, 20
Exec. Order 12,968 ................................................................................. 16

http://nnsa.energy.gov/ourmission .......................................................... 5

## STATEMENT OF JURISDICTION

Although plaintiff's Title VII claim is non-justiciable under *Department of Navy v. Egan*, 484 U.S. 518 (1988), the district court had jurisdiction over that claim under 28 U.S.C. § 1331.  *See Oryszak v. Sullivan*, 576 F.3d 522, 524-25 (holding that dismissal on *Egan* grounds is not jurisdictional).  The district court granted the government's motion for judgment on the pleadings and entered a final judgment on March 5, 2013. App. 36.[1]  Plaintiff filed a notice of appeal on March 28, 2013, which was timely under Fed. R. App. P. 4(a)(1).  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

The Department of Energy (DOE) requires individuals who occupy sensitive positions with access to nuclear materials to possess a high-level "Q" security clearance and also to be certified under its Human Reliability Program (HRP).  *See* 10 C.F.R. § 712.  The question presented is whether plaintiff's Title VII claim alleging that the Department denied him certification under the HRP for discriminatory reasons is justiciable under *Department of Navy v. Egan*, 484 U.S. 518 (1988).

---

[1] Plaintiff is proceeding *pro se* and did not file an appendix on appeal.  Instead, he attached eight exhibits to his opening brief, comprised of documents (or excerpts from documents) that were not part of the record before the district court.  On July 17, 2013, the government filed a motion to strike those extra-record materials, which is currently pending but will not affect the content of the government's brief on appeal.  For the Court's convenience, the government is also filing an appendix containing the record materials necessary for the disposition of this appeal.

## RELEVANT STATUTES AND REGULATIONS

A copy of the regulations governing certification under DOE's Human Reliability Program, 10 C.F.R. Part 712, is attached as an addendum to this brief.

## STATEMENT OF THE CASE

Plaintiff Ronnie Foote received a conditional offer of employment from the Department of Energy for a position in the National Nuclear Security Administration (NNSA) in Albuquerque, New Mexico.  The NNSA is an agency within DOE responsible for ensuring the safety, reliability and performance of the United States' nuclear weapons stockpile.  Given the sensitive functions performed by the NNSA, the offer of employment extended to plaintiff was conditioned on him being certified under the DOE's Human Reliability Program (HRP) – a prerequisite (along with possession of a high-level "Q" security clearance) for all positions with access to nuclear materials.  *See* 10 C.F.R. § 712.  After plaintiff was denied HRP certification, his conditional offer of employment with the NNSA was revoked.

Plaintiff filed a Title VII action in district court, alleging that DOE's decision to deny him certification under the HRP was discriminatory.  The government filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), arguing that plaintiff's challenge to the denial of HRP certification was non-justiciable under *Department of Navy v. Egan*, 484 U.S. 518 (1988).  The district court granted that motion, concluding that HRP certification is the functional equivalent of a security clearance pursuant to which DOE officials "make the annual predictive judgment as

2

to whether providing a particular individual access to nuclear programs is consistent with security and reliability concerns." App. 33. Because "Plaintiff's claim would require the Court to evaluate the merits of the predictive judgment made by trained individuals finding that the Plaintiff did not satisfy the security and reliability requirements necessary for access to the United States nuclear weapons program and related materials," App. 36, the district court dismissed plaintiff's complaint.

## STATEMENT OF FACTS

### A.    REGULATORY BACKGROUND.

Just as individuals whose jobs involve access to classified information must have the appropriate level of security clearance for their positions, individuals whose jobs involve access to, and responsibility for, nuclear materials must have the appropriate clearances and certifications. The Human Reliability Program ("HRP") is a DOE program "designed to ensure that individuals who occupy positions affording access to certain materials, nuclear explosive devices, facilities, and programs meet the highest standards of reliability and physical and mental suitability." 10 C.F.R. § 712.1.

The HRP was established, in part, under the Presidential delegation of authority in Executive Order 10,450, *see* 10 C.F.R. Part 712 ("Authority"), which requires federal agencies to ensure that their appointments are "clearly consistent with the interests of the national security." Exec. Order 10,450 § 2. *See Egan*, 484 U.S at 528-29 (explaining that security clearances may be granted only when the Executive Branch has made a predictive judgment pursuant to the "clearly consistent" standard

3

in Executive Order 10,450).  The HRP requires certification for designated positions

with responsibility for the transportation and protection of special nuclear materials

and explosives; access to information concerning vulnerabilities in protective systems

when transporting such materials; and certain other positions that could "significantly

impact national security or cause unacceptable damage."  10 C.F.R. § 712.10 (2007).[2]

     In order to be certified under the HRP, individuals must satisfy a variety of

requirements designed to ensure their fitness to occupy sensitive positions with access

to nuclear materials.  *See* 10 C.F.R. §§ 712.11 (describing general requirements for

HRP certification).  Among other things, individuals must have a "Q" access

authorization, *id.* § 712.11(a)(1), DOE's "highest level of security clearance, which

takes up to two years to obtain," *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 509 (6th

Cir. 2008).  In addition to maintaining a "Q" clearance, individuals seeking HRP

certification are subject to annual re-certification, which requires the submission of a

questionnaire for national security positions and an annual review of the employee's

personnel security file; completion of annual instruction, supervisory review, medical

assessment, management evaluation, and DOE personnel security review; various

drug and alcohol restrictions and tests; successful completion of a counterintelligence

evaluation, including a polygraph examination; and a psychological evaluation.  10

C.F.R. § 712.11(a)(2)-(10).  They are also subject to a host of other security checks and

---

[2] This brief cites to the 2007 version of 10 C.F.R. § 712 that was in effect when
plaintiff was denied HRP certification, which is reproduced in the addendum.

requirements, many of which take into account the particulars of the position at issue. *See id.* §§ 712.11-712.17. In short, HRP certification is a rigorous, multi-tiered process for clearing individuals to occupy highly sensitive positions with access to, and responsibility for, nuclear materials, including nuclear weapons.

## B. PROCEEDINGS IN THIS CASE.

1. Plaintiff Ronnie Foote, an African-American, is currently employed by the Department of Energy in Washington, D.C. In 2007, he was given a conditional offer of employment as an Emergency Operations Specialist (EOS) with DOE's National Nuclear Security Administration, Transportation and Emergency Control Center in Albuquerque, New Mexico. App. 8.[3] The NNSA is a semi-autonomous agency within DOE responsible for the management and security of the nation's nuclear weapons, nuclear nonproliferation, and naval reactor programs. 50 U.S.C. § 2401. The NNSA responds to nuclear and radiological emergencies in the United States and abroad, and provides safe and secure transportation of nuclear weapons, components and special nuclear materials, along with other missions supporting the national security. *See* http://nnsa.energy.gov/ourmission

The EOS position offered to plaintiff was contingent upon his certification in the Department's Human Reliability Program, and one of the requirements for HRP

---

[3] Because the district court decided this case on a motion for judgment on the pleadings, the relevant facts are taken from the complaint, documents incorporated into the complaint, and documents subject to judicial notice. *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).

5

certification is to pass a psychological exam.  App. 8-9.  Dr. Daniel Seagrave, one of the psychologists charged with determining whether plaintiff should be certified under the HRP, recommended against certification after conducting a psychological evaluation of plaintiff and reviewing relevant evidence in his file.  App. 9.  Based in part upon Dr. Seagrave's recommendation, other officials, including Dr. Anthony Traweek (Lead Psychologist HRP), Dr. John Sloan (Site Occupational Medical Director), and Mr. Dennis Reese (HRP Certifying Official) declined to certify plaintiff under the HRP, and his conditional offer for the EOS position was later revoked.

Plaintiff filed an administrative charge of race discrimination, alleging that DOE discriminated against him when it declined to certify him under the HRP.  An administrative judge rejected plaintiff's claim on the merits, and the EEOC's Office of Federal Operations affirmed on April 28, 2011.  App. 17.[4]  The EEOC found that DOE had "articulated legitimate, nondiscriminatory reasons for its actions," specifically identifying issues related to plaintiff's "background and behavior" that arose during his evaluation for HRP certification and "raised concerns about his integrity and reliability for HRP duties."  App. 20.  Among other things, the EEOC noted evidence that plaintiff "had received 10 letters of counseling and two letters of reprimand during his military service," and "was also vague and evasive in answering

---

[4] Because plaintiff attached the EEOC's decision to his complaint, the district court was entitled to consider it in ruling on the motion for judgment on the pleadings, and in any event this Court may take judicial notice of that decision.

questions about his prior drug use." *Ibid.* In light of this evidence, the EEOC held that plaintiff "has not shown that any of the Agency's actions were based on discriminatory animus or that the reasons articulated by the Agency for its actions were mere pretext to hide unlawful discrimination." *Ibid.*

After the adverse EEOC decision, plaintiff filed this Title VII action in district court, alleging that the denial of HRP certification was motivated by racial animus rather than valid concerns about his fitness for employment in a sensitive position with access to nuclear materials. Plaintiff generally alleged that Dr. Seagrave gave "intentionally false information" in his report to other DOE officials who then denied his request for HRP certification. App. 9. Specifically, plaintiff alleged that Dr. Seagrave lied about certain answers plaintiff gave during his interview, improperly contacted plaintiff's former supervisor, and manufactured allegations regarding reprimands plaintiff received while serving in the Air Force. App. 11. Plaintiff alleged that Dr. Seagrave's actions were all motivated by race. App. 14-15. Because plaintiff's complaint challenged the judgment of officials charged with clearing employees to occupy sensitive positions with access to nuclear materials, the government moved for judgment on the pleadings, arguing that his claim was not justiciable under *Egan.*

2. The district court granted the government's motion for judgment on the pleadings. The court rejected plaintiff's argument that "the HRP certification at issue was a suitability determination, *not* a security clearance, and thus falls outside the scope of *Egan* and its progeny." App. 29. While recognizing that "HRP certification

7

is not a security clearance," the court held that this distinction was "not dispositive under *Egan*" because "Plaintiff's Complaint challenges the merits of the Defendant's predictive judgment that the Plaintiff did not meet the standards of reliability and security necessary for employment in a position involving the United States nuclear weapons program." App. 29-30. Because *Egan* held that "it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment," *Egan*, 484 U.S. at 529, the district court held that plaintiff's claim was barred. App. 30.

After summarizing a few of the many decisions holding that *Egan* bars Title VII claims arising from the denial of security clearances, the district court observed that the "[e]xtension of *Egan* to bar decisions other than the denial or revocation of a security clearance has proved more controversial." App. 31. For example, the court stated, in *Rattigan v. Holder*, 689 F.3d 764 (D.C. Cir. 2012), this Court recently held that "*Egan* does not bar Title VII claims arising from the reporting of knowingly false information to the FBI's Security Division." App. 31. Rather than supporting plaintiff's position, however, the district court concluded that the majority's analysis in *Rattigan* confirmed that plaintiff's challenge to the denial of HRP certification was not justiciable. Relying upon this Court's statements in *Rattigan* that "the decision to grant or deny access to classified information must be based on judgments by appropriately trained adjudicative personnel," which are the judgments "that *Egan* insulates from judicial review," App. 33 (quoting *Rattigan*, 689 F.3d at 767), the district court

concluded that "Plaintiff is challenging precisely this type of 'predictive judgment' the *Rattigan* court indicated should be insulated from review." App. 33.

To bolster that conclusion, the district court summarized the purpose and basic requirements of HRP certification. Citing 10 C.F.R. § 712, the court stressed that the HRP seeks to ensure that individuals occupying positions with access to nuclear materials meet the highest standards of reliability; requires "the Department of Energy equivalent of a Top Secret security clearance;" and requires the completion of numerous annual evaluations, medical assessments, and security reviews. App. 33. Thus, the court stated, "while the HRP is not itself a 'security clearance' in the traditional sense of the term, it is a more rigorous screening program created so that relevant individuals within the Department of Energy make the annual predictive judgment as to whether providing a particular individual access to nuclear programs is consistent with security and reliability concerns." *Ibid.*

The court explained that plaintiff's complaint directly challenged predictive judgments by officials charged with administering the HRP. App. 33. Quoting allegations from plaintiff's complaint that "Dr. Seagrave's rationale for denying Mr. Foote HRP certification was full or errors and deliberately misleading," the court stressed that "Plaintiff's allegations target one of the trained individuals charged with making decisions relating to HRP certification." *Ibid.* "In other words," the court summarized, "the Plaintiff challenges the predictive judgment of trained adjudicative personnel responsible for determining whether an individual satisfies the security

standards necessary for employment in a position involving the nation's nuclear weapons." App. 34.

The district court also stressed that plaintiff's claim raised the same issue that led this Court to hold that plaintiff's Title VII claim was non-justiciable in *Bennett v. Chertoff*, 425 F.3d 999 (D.C. Cir. 2005): "the court cannot adjudicate the merits of the Plaintiff's Title VII claim without second-guessing the merits of the HRP certification decision." App. 34. In assessing the merits of Dr. Seagrave's recommendation, the court explained, a "fact finder would have to substitute its judgment for the predictive judgment of the psychologist responsible for evaluating whether or not the Plaintiff posed a security threat if provided access to the United States nuclear weapons program." *Ibid.* Moreover, "assuming the fact finder found Dr. Seagrave's recommendation was based on an improper purpose, the fact finder would then be forced to determine whether the final decision to deny the Plaintiff HRP certification was based on Dr. Seagrave's recommendation." *Ibid.*

Finally, the district court rejected plaintiff's attempt to advance a new theory for the first time in his opposition to the government's motion: an "argument that he is challenging the process afforded in denying his HRP certification, rather than the merits of the decision itself." App. 35. Even construing plaintiff's *pro se* complaint liberally, the court found that "none of the allegations even verge on asserting a due process violation." *Ibid.* Thus, even assuming it "could entertain a procedural claim arising from the denial of Plaintiff's HRP certification," the district court held that

10

"no such claim is alleged in this case."  App. 36.  Because "Plaintiff's claim would require the Court to evaluate the merits of the predictive judgment made by trained individuals finding that the Plaintiff did not satisfy the security and reliability requirements necessary for access to the United States nuclear weapons program and related materials,"  App. 36, the district court dismissed plaintiff's complaint.

## SUMMARY OF ARGUMENT

The district court correctly held that plaintiff's challenge to DOE's decision to deny him HRP certification, which would have allowed him to occupy a sensitive position with direct access to nuclear materials, is not justiciable under *Department of Navy v. Egan*, 484 U.S. 518 (1988).  It is well-established that courts may not second-guess the predictive judgments of Executive Branch officials making discretionary determinations about whether an individual may properly hold a security clearance. The same separation-of-powers concerns that caused the Supreme Court to hold in *Egan* that "outside nonexpert bodies" may not review the predictive judgments of Executive Branch agencies about who should be granted access to classified information apply with at least as much force to the predictive judgments of agency officials charged with determining who should be granted access to nuclear materials. As the district court properly recognized, HRP certification is functionally equivalent to a security clearance determination because it involves the same Executive Branch judgments regarding individuals' potential to pose risks to national security that the Supreme Court and this Court have held are insulated from judicial scrutiny.

11

Nothing in plaintiff's *pro se* brief on appeal calls into question the district court's conclusion that plaintiff's Title VII claim is non-justiciable under *Egan*.  Plaintiff does not identify any error in the district court's legal analysis or even cite *Egan* or any decisions by this Court or any other court applying *Egan*.  Instead, plaintiff simply reiterates the allegations in his complaint, offers improper, extra-record evidence to support those allegations, and insists that his Title VII claim is justiciable.  Even under the lenient standards generally applicable to *pro se* litigants, plaintiff's complete failure to advance any legal argument that the district court erred in applying *Egan* provides a sufficient basis, standing alone, to affirm the judgment below.

In any event, no sound basis exists for drawing a distinction for *Egan* purposes between Executive Branch judgments regarding access to classified information and national security judgments regarding access to nuclear materials.  Even if certification under the HRP can be characterized as a "suitability determination," that label is not dispositive.  As this Court made clear in *Bennett*, the inquiry under *Egan* is functional, not formalistic, and "suitability" determinations that implicate national security concerns are not reviewable.  *Bennett*, 425 F.3d at 1003-04.  Likewise, in *Brazil v. Dep't of the Navy*, 66 F.3d 193 (9th Cir. 1995), the Ninth Circuit held that a Title VII claim challenging the revocation of an employee's certification under a "suitability" program quite similar to the HRP – the Navy's "Nuclear Weapons Reliability Program" – was unreviewable under *Egan* because it was the functional equivalent of a security clearance decision.  The district court properly relied on these and other decisions in

concluding that plaintiff's challenge to the denial of HRP certification is not justiciable

under *Egan* because it implicates the same principle that courts may not second-guess

national security determinations made by the Executive Branch.

## STANDARD OF REVIEW

The grant or denial of a motion for judgment on the pleadings is reviewed *de*

*novo*. *National Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 9 (D.C. Cir. 2009).

## ARGUMENT

### THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF'S CHALLENGE TO THE DENIAL OF HRP CERTIFICATION IS NOT JUSTICIABLE UNDER *EGAN*.

### A.    *Egan's* Bar On Judicial Review Extends To Decisions By The Executive Branch Denying Clearance To Occupy Sensitive Positions With Access To Nuclear Materials.

1.  In *Egan*, the Supreme Court held that outside, non-expert bodies cannot

review Executive Branch judgments about whether specific individuals pose a risk to

the national security.  Grounding that rule in separation-of-powers concerns, the

Court emphasized that the duty to control access to classified information rests with

the Executive Branch agency responsible for the information, and derives from the

President's authority under Article II of the Constitution.  *Egan*, 584 U.S. 527-28.  The

Court stressed that such determinations are an "inexact science," involving the

exercise of "predictive judgment" about security risks that "must be made by those

with the necessary expertise in protecting classified information," and held that such

judgments are "committed to the broad discretion of the agency responsible."  *Id.* at

13

529.  As the Court summarized, "it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence." *Ibid.* "Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk." *Ibid.*

Applying *Egan*, this Court has repeatedly held that courts may not adjudicate claims brought under Title VII or other statutes that would require a factfinder to evaluate the merits of an Executive Branch agency's denial of a security clearance or similar decisions.  For example, in *Ryan v. Reno*, 168 F.3d 520 (D.C. Cir. 1999), this Court held that *Egan* precluded Title VII claims challenging a decision by the INS refusing to waive background checks for foreign nationals seeking federal employment because "the waiver denials were tantamount to clearance denials and were based on the same sort of 'predictive judgment' that *Egan* tells us 'must be made by those with the necessary expertise in protecting classified information,' without interference from the courts." *Id.* at 524 (quoting *Egan*, 484 U.S. at 529).

Likewise, in *Bennett v. Chertoff*, 425 F.3d 999 (D.C. Cir. 2005), this Court held that *Egan* precluded a retaliation claim even though the plaintiff was fired based on information that came to light during a "suitability determination." *Id.* at 1001. Although the plaintiff argued that national security concerns did not actually play a role in her termination (*i.e.*, that they were a *post hoc* rationalization designed to preclude judicial review), this Court held that her claim was barred because there was

14

evidence that national security concerns were "a contemporaneous reason for the agency's action." *Id.* at 1003-04. *See also Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009) (affirming dismissal of APA claim where the Secret Service "made a judgment about Oryszak's risk to security," because *Egan* teaches that review of that judgment "is outside the authority of a nonexpert body").

    2. Applying principles distilled from *Egan*, *Bennett* and other decisions, the district court correctly held that plaintiff's challenge to the denial of HRP certification is non-justiciable because determining who should be cleared for access to nuclear materials and weapons involves the same type of predictive judgments regarding risks to national security as a security clearance decision. Indeed, one of the requirements for HRP certification is "Q" access authorization, 10 C.F.R. § 712.11(a)(1), the DOE equivalent of a Top Secret security clearance, which shows that HRP certification is effectively a "super-security" clearance. *See* App. 7 (explaining that HRP certification "is a more rigorous screening program" than a standard security clearance).

    As the district court recognized, moreover, dismissal of plaintiff's claim is also supported by *Rattigan v. Holder*, 643 F.3d 975 (D.C. Cir. 2011), *vacated in part and reaffirmed in part in*, 689 F.3d 764 (D.C. Cir. 2012). While the panel majority in that case held that *Egan* would not necessarily bar review of security *reporting* decisions made by officials outside the FBI's Security Division, the panel reaffirmed that *Egan's* "absolute" bar shields from review the security-related judgments of agency officials charged with making such decisions. *See Rattigan*, 689 F.3d at 768, 771. As the district

court explained, that holding is dispositive in this case, because there can be no doubt

that "the Plaintiff challenges the predictive judgment of trained adjudicative personnel

responsible for determining whether an individual satisfies the security standards

necessary for employment in a position involving the nation's nuclear weapons."

App. 34. Specifically, plaintiff challenges the judgment and honesty of Dr. Seagrave,

one of the psychologists charged with evaluating whether he "posed a security threat

if provided access to the United States nuclear weapons program." *Ibid.* Under

*Rattigan*, therefore, plaintiff's claim remains subject to *Egan*'s "absolute" bar to judicial

review.[5] *Rattigan*, 689 F.3d at 768, 771. *See also Rattigan*, 643 F.3d 983-85 (reversing

verdict in plaintiff's favor because jury was required to second-guess the security-

related judgment of officials who elected to open a security investigation).

　　　The district court acknowledged that no court has squarely addressed whether

challenges to Executive Branch decisions denying clearance to occupy positions with

access to nuclear materials – here, the denial of HRP certification – are justiciable

---

[5] For the reasons outlined in our petition for rehearing *en banc* in *Rattigan*, and those expressed by Judge Kavanaugh in his dissenting opinions in that case, *see* 689 F.3d at 773-76; 643 F.3d at 989-992, the government continues to believe that allowing Title VII claims predicated upon the allegedly "false" reporting of security risks is contrary to *Egan*, will invariably chill necessary security reporting under Executive Order 12,968, and will create significant practical difficulties in future cases as courts attempt to draw lines between reviewable and unreviewable security-related decisions. The 4-4 vote by this Court denying our petition for rehearing *en banc* in *Rattigan* suggests that several judges on this Court share our concerns. However, we recognize that *Rattigan* is binding circuit precedent, and this appeal presents no occasion to reconsider *Rattigan* in any event because, as explained above, plaintiff's Title VII claim is non-justiciable under the legal framework employed in *Rattigan*.

under *Egan*.  However, at least one court of appeals has assumed (without expressly

deciding) that the revocation of an employee's certification under a similar suitability

program – the Navy's "Nuclear Weapons Personnel Reliability Program" – is the

functional equivalent of a security clearance revocation, and thus held that *Egan* bars a

Title VII claim predicated upon such action.  *See Brazil v. Dep't of Navy*, 66 F.3d 193,

195 & n.1 (9th Cir. 1995).  Similarly, other courts have held that challenges to other

types of decisions implicating national security concerns are non-justiciable.  *See, e.g.*,

*Becerra v. Dalton*, 94 F.3d 145, 148-49 (4th Cir. 1996) (decision to initiate security

investigation); *Beattie v. Boeing Co.*, 43 F.3d 559, 564-67 (10th Cir. 1991) (denial of

access to area surrounding Air Force One).  Such claims invariably require courts to

review the merits of predictive judgments regarding risks to national security – an

activity that *Egan* plainly forbids.  *See Bennett*, 425 F.3d at 1003.  *See also El-Ganayni v.*

*U.S. Dep't of Energy*, 591 F.3d 176, 185 (3d Cir. 2010) (holding that *Egan* bars claim

brought by former employee of defense contractor alleging that DOE's revocation of

his security clearance violated First Amendment because it would require DOE to

explain its actions and a factfinder to evaluate that explanation).

## B.      No Basis Exists For Reversing The Judgment Below.

On appeal plaintiff does not discuss – or even cite – *Egan*, or any decisions by

this Court or any other court applying *Egan*.  Nor does plaintiff challenge the district

court's conclusion that the denial of HRP certification is equivalent to the denial of a

security clearance for *Egan* purposes.  Plaintiff has thus waived any argument that the

district court's judgment should be reversed on *Egan* grounds by not advancing such an argument in his opening brief.  *See Catawba Cnty., N.C. v. EPA*, 571 F.3d 20, 38 (D.C.Cir. 2009) (per curiam) (holding that petitioners waived two statutory arguments by failing to raise them in opening briefs); *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1160 (D.C.Cir.2002) ("As we have said many times before, a party waives its right to challenge a ruling of the district court if it fails to make that challenge in its opening brief.").  Although waiver rules are not normally enforced as vigorously against *pro se* litigants, plaintiff's complete failure to identify any factual or legal errors in the district court's application of *Egan* provides an adequate basis, by itself, to affirm the judgment below.

In any event, the sparse arguments plaintiff *has* advanced on appeal underscore the degree to which adjudicating his Title VII claim would require a factfinder to second-guess the judgments of Executive Branch officials charged with making HRP certification decisions – determinations with a direct and obvious impact on national security of the sort the *Egan* Court long ago held were unreviewable.

Plaintiff insists that he is "not asking this court to review national security concerns."  Pl. Br. 2.  Nevertheless, his own description of what he *is* asking this Court to review refutes that contention:  "I am asking [the Court] to acknowledge the fact that these two individuals, Suzanne Garcia and Dr. Daniel Seagrave, admitted to making up these lies *and false security concerns*."  Pl. Br. 2 (emphasis added).  *See also* Pl. Br. 7 (arguing that "Suzanne Garcia and Dr. Daniel Seagrave intentionally fabricated

18

false security concerns and damaging accusations against me"). In short, plaintiff's

Title VII claim rests exclusively on allegations that security officials with undisputed

training and authority to make certification decisions under the HRP lied and

fabricated security concerns.[6] As this Court has repeatedly recognized, a factfinder

cannot evaluate the merits of such a claim without evaluating the merits of security

concerns articulated by the Executive Branch, and that is precisely what *Egan*

prohibits. *See, e.g., Ryan*, 168 F.3d at 524 (explaining that a court cannot evaluate

whether a security decision is discriminatory without assessing the validity of the

decision itself); *Bennett*, 425 F.3d 999, 1003 (D.C. Cir. 2005) (noting the "impossibility"

of proving pretext without testing the merits of the Executive security decision).

Plaintiff provides no basis for drawing a distinction for purposes of *Egan*

between the judgments of Executive Branch officials regarding access to classified

information and the judgments of officials regarding access to nuclear materials, and

no basis exists for any such distinction. Positions that require HRP certification entail

access to some of the most carefully-guarded and sensitive classified information and

matter bearing on national security. *See, e.g.*, 10 C.F.R. 712.10(a)(3) (HRP certification

required for positions involving access to "information concerning vulnerabilities in

---

[6] In an effort to support these allegations plaintiff attached eight exhibits to his opening brief, comprised largely of excerpts from documents that were not part of the record before the district court. On July 17, 2013, the government filed a motion to strike those materials from plaintiff's brief. Regardless of how this Court rules on that motion, however, those materials are not relevant to the sole issue presented on appeal: whether *Egan* bars plaintiff's challenge to the denial of HRP certification.

protective systems when transporting nuclear explosives, nuclear devices, or selected components"). Indeed, DOE established the HRP pursuant to authority delegated under Executive Order 10,450, *see* 10 C.F.R. § 712 ("Authority"), which is the same delegation of Article II power that provided the foundation for the Supreme Court's decision in *Egan*. *See Egan*, 484 U.S. at 528-29 (explaining that application of the "clearly consistent with the national security" standard in Executive Order 10,450 involves the exercise of "predictive judgment" about potential security risks). For these reasons, the district court properly concluded that, "while the HRP is not itself a 'security clearance' in the traditional sense of the term, it is a more rigorous screening program created so that relevant individuals within the Department of Energy make the annual predictive judgment as to whether providing a particular individual access to nuclear programs is consistent with security and reliability concerns." App. 33. *See also Brazil*, 66 F.3d at 195 (treating revocation of an employee's certification under the Navy's "Nuclear Weapons Reliability Program" the same as the revocation of a security clearance for *Egan* purposes).

20

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

STUART F. DELERY
*Acting Assistant Attorney General*
RONALD MACHEN
*United States Attorney*

 s/Charles W. Scarborough
MARLEIGH D. DOVER
CHARLES W.SCARBOROUGH
(202) 514-1927
*Attorneys, Appellate Staff*
*Civil Division*
*United States Department of Justice*
*950 Pennsylvania Ave., N.W., Rm. 7244*
*Washington, D.C. 20530-0001*

JULY 2013

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,143 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

s/Charles W. Scarborough
CHARLES W. SCARBOROUGH

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2013, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  Because appellant is proceeding *pro se* and is not a registered CM/ECF user, I also caused a copy of the foregoing brief to be served upon him by Federal Express next-day delivery at:

Ronnie Foote
3720 Lumar Drive
Fort Washington, MD 20744
505-688-2020

 s/ Charles W. Scarborough
CHARLES W. SCARBOROUGH

# ADDENDUM

10 C.F.R. Part 712

Department of Energy                                            Pt. 712

GUIDELINE K: SECURITY VIOLATIONS

33. *The Concern.* Noncompliance with security regulations raises doubt about an individual's trustworthiness, willingness, and ability to safeguard classified information.

34. *Conditions that could raise a security concern and may be disqualifying include:*

(a) Unauthorized disclosure of classified information;

(b) Violations that are deliberate or multiple or due to negligence.

35. *Conditions that could mitigate security concerns include actions that:*

(a) Were inadvertent;

(b) Were isolated or infrequent;

(c) Were due to improper or inadequate training;

(d) Demonstrate a positive attitude towards the discharge of security responsibilities.

GUIDELINE L: OUTSIDE ACTIVITIES

36. *The Concern.* Involvement in certain types of outside employment or activities is of security concern if it poses a conflict with an individual's security responsibilities and could create an increased risk of unauthorized disclosure of classified information.

37. Conditions that could raise a security concern and may be disqualifying include any service, whether compensated, volunteer, or employment with:

(a) A foreign country;

(b) Any foreign national;

(c) A representative of any foreign interest;

(d) Any foreign, domestic, or international organization or person engaged in analysis, discussion, or publication of material on intelligence, defense, foreign affairs, or protected technology.

38. *Conditions that could mitigate security concerns include:*

(a) Evaluation of the outside employment or activity indicates that it does not pose a conflict with an individual's security responsibilities;

(b) The individual terminates employment or discontinues the activity upon being notified that it is in conflict with his or her security responsibilities.

GUIDELINE M: MISUSE OF INFORMATION TECHNOLOGY SYSTEMS

39. *The Concern.* Noncompliance with rules, procedures, guidelines, or regulations pertaining to information technology systems may raise security concerns about an individual's trustworthiness, willingness, and ability to properly protect classified systems, networks, and information. Information Technology Systems include all related equipment used for the communication, transmission, processing, manipulation, and storage of classified or sensitive information.

40. *Conditions that could raise a security concern and may be disqualifying include:*

(a) Illegal or unauthorized entry into any information technology system;

(b) Illegal or unauthorized modification destruction, manipulation or denial of access to information residing on an information technology system;

(c) Removal (or use) of hardware, software, or media from any information technology system without authorization, when specifically prohibited by rules, procedures, guidelines or regulations;

(d) Introduction of hardware, software, or media into any information technology system without authorization, when specifically prohibited by rules, procedures, guidelines or regulations.

41. *Conditions that could mitigate security concerns include:*

(a) The misuse was not recent or significant;

(b) The conduct was unintentional or inadvertent;

(c) The introduction or removal of media was authorized;

(d) The misuse was an isolated event;

(e) The misuse was followed by a prompt, good faith effort to correct the situation.

[66 FR 47067, Sept. 11, 2001]

## Subpart B [Reserved]

## PART 712—HUMAN RELIABILITY PROGRAM

### Subpart A—Establishment of and Procedures for the Human Reliability Program

GENERAL PROVISIONS

Sec.
712.1   Purpose.
712.2   Applicability.
712.3   Definitions.

PROCEDURES

712.10   Designation of HRP positions.
712.11   General requirements for HRP certification.
712.12   HRP implementation.
712.13   Supervisory review.
712.14   Medical assessment.
712.15   Management evaluation.
712.16   DOE security review.
712.17   Instructional requirements.
712.18   Transferring HRP certification.
712.19   Removal from HRP.
712.20   Request for reconsideration or certification review hearing.
712.21   Office of Hearings and Appeals.
712.22   Hearing officer's report and recommendation.
712.23   Final decision by DOE Deputy Secretary.

355

## §712.1

### Subpart B—Medical Standards

712.30  Applicability.
712.31  Purpose.
712.32  Designated Physician.
712.33  Designated Psychologist.
712.34  Site Occupational Medical Director.
712.35  Director, Office of Health and Safety.
712.36  Medical assessment process.
712.37  Evaluation for hallucinogen use.
712.38  Maintenance of medical records.

AUTHORITY: 42 U.S.C. 2165; 42 U.S.C. 2201; 42 U.S.C. 5814-5815; 42 U.S.C. 7101 *et seq.*; 50 U.S.C. 2401 *et seq.*; E.O. 10450, 3 CFR 1949-1953 Comp., p. 936, as amended; E.O. 10865, 3 CFR 1959-1963 Comp., p. 398, as amended; 3 CFR Chap. IV.

SOURCE: 69 FR 3223, Jan. 23, 2004, unless otherwise noted.

## Subpart A—Establishment of and Procedures for the Human Reliability Program

### GENERAL PROVISIONS

### §712.1  Purpose.

This part establishes the policies and procedures for a Human Reliability Program (HRP) in the Department of Energy (DOE), including the National Nuclear Security Administration (NNSA). The HRP is a security and safety reliability program designed to ensure that individuals who occupy positions affording access to certain materials, nuclear explosive devices, facilities, and programs meet the highest standards of reliability and physical and mental suitability. This objective is accomplished under this part through a system of continuous evaluation that identifies individuals whose judgment and reliability may be impaired by physical or mental/personality disorders, alcohol abuse, use of illegal drugs or the abuse of legal drugs or other substances, or any other condition or circumstance that may be of a security or safety concern.

### §712.2  Applicability.

The HRP applies to all applicants for, or current employees of DOE or a DOE contractor or subcontractor in a position defined or designated under §712.10 of this subpart as an HRP position. Individuals currently in a Personnel Assurance Program or Personnel Security

Assurance Program position will be grandfathered into the HRP.

### §712.3  Definitions.

The following definitions are used in this part:

*Accelerated Access Authorization Program* means the DOE program for granting interim access to classified matter and special nuclear material based on a drug test, a National Agency Check, a psychological assessment, a counterintelligence-scope polygraph examination in accordance with 10 CFR part 709, and a review of the applicant's completed "Questionnaire for National Security Positions" (Standard Form 86).

*Access* means:

(1) A situation that may provide an individual proximity to or control over Category I special nuclear material (SNM); or

(2) The proximity to a nuclear explosive and/or Category I SNM that allows the opportunity to divert, steal, tamper with, and/or damage the nuclear explosive or material in spite of any controls that have been established to prevent such unauthorized actions.

*Alcohol* means the intoxicating agent in beverage alcohol, ethyl alcohol, or other low molecular weight alcohol.

*Alcohol abuse* means consumption of any beverage, mixture, or preparation, including any medication containing alcohol that results in impaired social or occupational functioning.

*Alcohol concentration* means the alcohol in a volume of breath expressed in terms of grams of alcohol per 210 liters of breath as indicated by a breath test.

*Alcohol use disorder* means a maladaptive pattern in which a person's intake of alcohol is great enough to damage or adversely affect physical or mental health or personal, social, or occupational function; or when alcohol has become a prerequisite to normal function.

*Certification* means the formal action the HRP certifying official takes that permits an individual to perform HRP duties after it is determined that the individual meets the requirements for certification under this part.

*Contractor* means subcontractors at all tiers and any industrial, educational, commercial, or other entity.

grantee, or licensee,
ployee that has exec
with the Federal go
purpose of performi
tract, license, or othe

*Designated Physicia:*
doctor of medicine c
has been nominated
pational Medical Dir
approved by the Mar
with the concurrenc
Office of Health and
professional expertis
medicine for the HRP

*Designated Psycholc*
censed Ph.D., or Psy.I
chology who has be
the SOMD and appro
ager or designee, wit
of the Director, Offi
Safety, to provide p
tise in the area of psy
ment for the HRP.

*Diagnostic and Stat*
*Mental Disorders* me
version of the Amer
Association's manual
nitions of psychiatric
nostic criteria of men

*Director, Office of F*
means the DOE indivi
sibility for policy an
ance for DOE occup
programs.

*Drug abuse* means
drug or misuse of legal

*Evidential-grade brea*
means a device that
model standards for
breath-testing device
Conforming Products I
Breath Measurement D
by the National Highw
ty Administration (NH

*Flashback* means a
spontaneous recurrenc
of a hallucinatory ex|
ceptual distortion th
after taking the halluc
duced the original effe
to as hallucinogen pe
tion disorder.

*Hallucinogen* means
stance that produces
distortions in percepti
sounds, and disturban
judgment, and memory.

grantee, or licensee, including an employee that has executed an agreement with the Federal government for the purpose of performing under a contract, license, or other arrangement.

*Designated Physician* means a licensed doctor of medicine or osteopathy who has been nominated by the Site Occupational Medical Director (SOMD) and approved by the Manager or designee, with the concurrence of the Director, Office of Health and Safety, to provide professional expertise in occupational medicine for the HRP.

*Designated Psychologist* means a licensed Ph.D., or Psy.D., in clinical psychology who has been nominated by the SOMD and approved by the Manager or designee, with the concurrence of the Director, Office of Health and Safety, to provide professional expertise in the area of psychological assessment for the HRP.

*Diagnostic and Statistical Manual of Mental Disorders* means the current version of the American Psychiatric Association's manual containing definitions of psychiatric terms and diagnostic criteria of mental disorders.

*Director, Office of Health and Safety* means the DOE individual with responsibility for policy and quality assurance for DOE occupational medical programs.

*Drug abuse* means use of an illegal drug or misuse of legal drugs.

*Evidential-grade breath alcohol device* means a device that conforms to the model standards for an evidential breath-testing device as listed on the Conforming Products List of Evidential Breath Measurement Devices published by the National Highway Traffic Safety Administration (NHTSA).

*Flashback* means an involuntary, spontaneous recurrence of some aspect of a hallucinatory experience or perceptual distortion that occurs long after taking the hallucinogen that produced the original effect; also referred to as hallucinogen persisting perception disorder.

*Hallucinogen* means a drug or substance that produces hallucinations, distortions in perception of sights and sounds, and disturbances in emotion, judgment, and memory.

*HRP candidate* means an individual being considered for assignment to an HRP position.

*HRP-certified individual* means an individual who has successfully completed the HRP requirements.

*HRP certifying official* means the Manager or the Manager's designee who certifies, recertifies, temporarily removes, reviews the circumstances of an individual's removal from an HRP position, and directs reinstatement.

*HRP management official* means an individual designated by the DOE or a DOE contractor, as appropriate, who has programmatic responsibility for HRP positions.

*Illegal drug* means a controlled substance, as specified in Schedules I through V of the Controlled Substances Act, 21 U.S.C. 811 and 812; the term does not apply to the use of a controlled substance in accordance with the terms of a valid prescription, or other uses authorized by Federal law.

*Impaired or impairment* means a decrease in functional capacity of a person that is caused by a physical, mental, emotional, substance abuse, or behavioral disorder.

*Incident* means an unplanned, undesired event that interrupts the completion of an activity and that may include property damage or injury.

*Job task analysis* means the formal process of defining the requirements of a position and identifying the knowledge, skills, and abilities necessary to effectively perform the duties of the position.

*Manager* means the Manager of the Chicago, Idaho, Oak Ridge, Richland, and Savannah River Operations Offices; Manager of the Pittsburgh Naval Reactors Office and the Schenectady Naval Reactors Office; Site Office Managers for Livermore, Los Alamos, Sandia, Y-12, Nevada, Pantex, Kansas City, and Savannah River; Director of the Service Center, Albuquerque; Assistant Deputy Administrator for the Office of Secure Transportation, Albuquerque; and for the Washington, DC area, the Deputy Chief for Operations, Office of Health, Safety and Security.

*Material access area* means a type of Security Area that is authorized to

357

## § 712.3

contain a Category I quantity of special nuclear material and that has specifically defined physical barriers, is located within a Protected Area, and is subject to specific access controls.

*Medical assessment* means an evaluation of an HRP candidate and HRP-certified individual's present health status and health risk factors by means of:

(1) Medical history review;

(2) Job task analysis;

(3) Physical examination;

(4) Appropriate laboratory tests and measurements; and

(5) Appropriate psychological and psychiatric evaluations.

*Nuclear explosive* means an assembly of fissionable and/or fusionable materials and main charge high explosive parts or propellants that is capable of producing a nuclear detonation.

*Nuclear explosive duties* means work assignments that allow custody of a nuclear explosive or access to a nuclear explosive device or area.

*Occurrence* means any event or incident that is a deviation from the planned or expected behavior or course of events in connection with any DOE or DOE-controlled operation if the deviation has environmental, public health and safety, or national security protection significance, including (but not limited to) incidents involving:

(1) Injury or fatality to any person involving actions of a DOE employee or contractor employee;

(2) An explosion, fire, spread of radioactive material, personal injury or death, or damage to property that involves nuclear explosives under DOE jurisdiction;

(3) Accidental release of pollutants that results from, or could result in, a significant effect on the public or environment; or

(4) Accidental release of radioactive material above regulatory limits.

*Psychological assessment or test* means a scientifically validated instrument designed to detect psychiatric, personality, and behavioral tendencies that would indicate problems with reliability and judgment.

*Random alcohol testing* means the unscheduled, unannounced alcohol testing of randomly selected employees by a process designed to ensure that selec-

tions are made in a nondiscriminatory manner.

*Random drug testing* means the unscheduled, unannounced drug testing of randomly selected employees by a process designed to ensure that selections are made in a nondiscriminatory manner.

*Reasonable suspicion* means a suspicion based on an articulable belief that an individual uses illegal drugs or is under the influence of alcohol, drawn from reasonable inferences from particular facts, as detailed further in part 707 of this title.

*Recertification* means the formal action the HRP certifying official takes annually, not to exceed 12 months, that permits an employee to remain in the HRP and perform HRP duties.

*Reinstatement* means the action the HRP certifying official takes after it has been determined that an employee who has been temporarily removed from the HRP meets the certification requirements of this part and can be returned to HRP duties.

*Reliability* means an individual's ability to adhere to security and safety rules and regulations.

*Safety concern* means any condition, practice, or violation that causes a substantial probability of physical harm, property loss, and/or environmental impact.

*Security concern* means the presence of information regarding an individual applying for or holding an HRP position that may be considered derogatory under the criteria listed in 10 CFR part 710, subpart A.

*Semi-structured interview* means an interview by a Designated Psychologist, or a psychologist under his or her supervision, who has the latitude to vary the focus and content of the questions depending on the interviewee's responses.

*Site Occupational Medical Director (SOMD)* means the physician responsible for the overall direction and operation of the occupational medical program at a particular site.

*Supervisor* means the individual who has oversight and organizational responsibility for a person holding an HRP position, and whose duties include evaluating the behavior and performance of the HRP-certified individual.

*Transfer* means an HRP individual moving from on other site.

*Unacceptable damage* m dent that could result in onation; high-explosive deflagration from a nucle the diversion, misuse, o Category I special nuclea an interruption of nuclear erations with a significa national security.

*Unsafe practice* means ei action departing from pi ard controls or job proced tices, or an action causing necessary exposure to a he

[69 FR 3223, Jan. 23, 2004, as FR 68731, Nov. 28, 2006]

PROCEDURES

### § 712.10  Designation of HE

(a) HRP certification is each individual assigned ing for, a position that:

(1) Affords access to Ca or has responsibility for t or protection of Category of SNM;

(2) Involves nuclear ex or has responsibility for v protecting, or transporting plosives, nuclear devices components;

(3) Affords access to inf cerning vulnerabilities i systems when transporting plosives, nuclear devices, ponents, or Category I SNM; or

(4) Is not included ir (a)(1) through (3) of this s fords the potential to sig pact national security or ceptable damage and is ap ant to paragraph (b) of thi

(b) The Manager or the l ment official may nomin for the HRP that are not paragraphs (a)(1) throug section or that have nc been designated HRP p such nominations must l to and approved by eithe Administrator, his or her Chief Health, Safety and S cer, or the appropriate L

Edition)

iinatory

the un-
esting of
by a
it selec-
iinatory

a sus-
e belief
drugs or
l, drawn
om par-
r in part

mal ac-
al takes
chs, that
n in the

tion the
after it
mployee
removed
ification
l can be

al's abil-
d safety

ondition,
causes a
physical
environ-

presence
idividual
RP posi-
rogatory
CFR part

eans an
psycholo-
is or her
itude to
the ques-
rviewee's

*Director*
respon-
and oper-
tical pro-

dual who
ional re-
lding an
s include
perform-
vidual.

*Transfer* means an HRP-certified individual moving from one site to another site.

*Unacceptable damage* means an incident that could result in a nuclear detonation; high-explosive detonation or deflagration from a nuclear explosive; the diversion, misuse, or removal of Category I special nuclear material; or an interruption of nuclear explosive operations with a significant impact on national security.

*Unsafe practice* means either a human action departing from prescribed hazard controls or job procedures or practices, or an action causing a person unnecessary exposure to a hazard.

[69 FR 3223, Jan. 23, 2004, as amended at 71 FR 68731, Nov. 28, 2006]

## PROCEDURES

### §712.10  Designation of HRP positions.

(a) HRP certification is required for each individual assigned to, or applying for, a position that:

(1) Affords access to Category I SNM or has responsibility for transportation or protection of Category I quantities of SNM;

(2) Involves nuclear explosive duties or has responsibility for working with, protecting, or transporting nuclear explosives, nuclear devices, or selected components;

(3) Affords access to information concerning vulnerabilities in protective systems when transporting nuclear explosives, nuclear devices, selected components, or Category I quantities of SNM; or

(4) Is not included in paragraphs (a)(1) through (3) of this section but affords the potential to significantly impact national security or cause unacceptable damage and is approved pursuant to paragraph (b) of this section.

(b) The Manager or the HRP management official may nominate positions for the HRP that are not specified in paragraphs (a)(1) through (3) of this section or that have not previously been designated HRP positions. All such nominations must be submitted to and approved by either the NNSA Administrator, his or her designee, the Chief Health, Safety and Security Officer, or the appropriate Lead Program Secretarial Officer, or his or her designee.

(c) Before nominating a position for designation as an HRP position, the Manager or the HRP management official must analyze the risks the position poses for the particular operational program. If the analysis shows that more restrictive physical, administrative, or other controls could be implemented that would prevent the position from being designated an HRP position, those controls will be implemented, if practicable.

(d) Nothing in this part prohibits contractors from establishing stricter employment standards for individuals who are nominated to DOE for certification or recertification in the HRP.

[69 FR 3223, Jan. 23, 2004, as amended at 71 FR 68731, Nov. 28, 2006]

### §712.11  General requirements for HRP certification.

(a) The following certification requirements apply to each individual applying for or in an HRP position:

(1) A DOE "Q" access authorization based on a background investigation, except for security police officers who have been granted an interim "Q" through the Accelerated Access Authorization Program;

(2) The annual submission of SF-86, OMB Control No. 3206-0007, Questionnaire for National Security Positions, Part 2, and an annual review of the personnel security file;

(3) Signed releases, acknowledgments, and waivers to participate in the HRP on forms provided by DOE;

(4) Completion of initial and annual HRP instruction as provided in §712.17;

(5) Successful completion of an initial and annual supervisory review, medical assessment, management evaluation, and a DOE personnel security review for certification and recertification in accordance with this part. With respect to the DOE personnel security review:

(i) If the DOE personnel security review is not completed within the 12-month time period and the individual's access authorization is not suspended, the HRP certification form shall be forwarded to the HRP certifying official

for recertification or temporary removal, contingent upon a favorable security review;

(ii) If a final determination has been made by DOE personnel security that is favorable, this information shall be forwarded to the HRP certifying official and so noted on the certification form; or

(iii) If the final determination has been made by DOE personnel security that the access authorization has been suspended, the individual shall be immediately removed from the HRP position, the HRP certifying official notified, the information noted on the certification form, and the procedures outlined in 10 CFR part 710, subpart A, shall be followed.

(6) No use of any hallucinogen in the preceding five years and no experience of flashback resulting from the use of any hallucinogen more than five years before applying for certification or recertification;

(7) A psychological evaluation consisting of a generally accepted psychological assessment (test) and a semi-structured interview;

(8) An initial drug test and random drug tests for the use of illegal drugs at least once each 12 months in accordance with DOE policies implementing Executive Order 12564 or the relevant provisions of 10 CFR part 707 for DOE contractors, and DOE Order 3792.3, "Drug-Free Federal Workplace Testing Implementation Program," for DOE employees;

(9) An initial alcohol test and random alcohol tests at least once each 12 months using an evidential-grade breath alcohol device, as listed without asterisks on the Conforming Products List of Evidential Breath Measurement Devices published by the NHTSA (49 CFR part 40); and

(10) Successful completion of a counterintelligence evaluation, which includes a counterintelligence-scope polygraph examination in accordance with DOE's Polygraph Examination Regulation, 10 CFR part 709, and any subsequent revisions to that regulation.

(b) Each HRP candidate must be certified in the HRP before being assigned to HRP duties and must be recertified annually, not to exceed 12 months between recertifications. For certification:

(1) Individuals in newly identified HRP positions must immediately sign the releases, acknowledgments, and waivers to participate in the HRP and complete initial instruction on the importance of security, safety, reliability, and suitability. If these requirements are not met, the individual must be removed from the HRP position.

(2) All remaining HRP requirements listed in paragraph (a) of this section must be completed in an expedited manner.

(c) Alcohol consumption is prohibited within an eight-hour period preceding scheduled work for individuals performing nuclear explosive duties and for individuals in specific positions designated by either the Manager, the NNSA Administrator, his or her designee, or the appropriate Lead Program Secretarial Officer, or his or her designee.

(d) Individuals reporting for unscheduled nuclear explosive duties and those specific positions designated by either the Manager, the NNSA Administrator or his or her designee, or the appropriate Lead Program Secretarial Officer, or his or her designee, will be asked prior to performing any type of work if they have consumed alcohol within the preceding eight-hour period. If they answer "no," they may perform their assigned duties but still may be tested.

(e) HRP-certified individuals may be tested for alcohol and/or drugs in accordance with § 712.15(b), (c), (d) and (e) if they are involved in an incident, unsafe practice, or an occurrence, or if there is reasonable suspicion that they may be impaired.

## § 712.12   HRP implementation.

(a) The implementation of the HRP is the responsibility of the appropriate Manager or his or her designee. The Manager or designee must fully implement the HRP by April 22, 2004.

(b) The HRP Management Official must:

(1) Prepare an initial HRP implementation plan and submit it by March 23, 2004, to the applicable Manager for review and site approval. The implementation plan must:

(i) Be reviewed an[…] two years;

(ii) Include the fou[…] nents of the HRP pro[…] review, medical asse[…] ment evaluation (wh[…] dom drug and alcoho[…] DOE personnel securi[…] and

(iii) Include the HR[…] education componen[…] § 712.17 of this part.

(2) Approve the te[…] and the reinstatemen[…] removal of an HRP-c[…] if the removal was ba[…] rity concern and the [...] dividual continues to [...] cation requirements [...] HRP certifying offic[…] tions.

(c) The Deputy Adm[…] fense Programs, NNSA[…]

(1) Provide advice [...] the Chief Health, Saf[…] Officer, regarding po[…] and guidance for all [...] duty requirements; an[…]

(2) Be responsible fo[…] of all nuclear explosi[…] quirements.

(d) The DOE Deput[…] on a recommendati[…] Health, Safety and [...] makes the final decis[…] of denial or revocatio[…] or recertification from[…]

(e) The Director, O[…] responsible for HRP p[…]

(1) Ensure consiste[…] throughout the DOE a[…]

(2) Review and com[…] implementation plan[…] sistency with policy; [...]

(3) Provide policies [...] cluding instructiona[…] NNSA and non-NNS[…] concerning the HRP; [...]

(f) The Manager mu[…]

(1) Review and app[…] plementation plan f[…] under their cognizanc[…] plan to the Director, [...] and

(2) Ensure that th[…] mented at the site [...] their cognizance.

(g) The HRP certify[…]

'or certifi-

r identified
liately sign
nents, and
ne HRP and
. on the im-
reliability,
quirements
must be re-
m.
quirements
his section
expedited

prohibited
1 preceding
duals per-
duties and
sitions des-
nager, the
r her des-
d Program
r her des-

r unsched-
and those
l by either
ninistrator
the appro-
arial Offi-
e, will be
ny type of
d alcohol
our period.
Ly perform
ill may be

ls may be
ugs in ac-
(d) and (e)
ident, un-
nce, or if
that they

t.
he HRP is
ppropriate
gnee. The
lly imple-
4.
t Official

mplemen-
March 23,
er for re-
mplemen-

(i) Be reviewed and updated every two years;

(ii) Include the four annual components of the HRP process: supervisory review, medical assessment, management evaluation (which includes random drug and alcohol testing), and a DOE personnel security determination; and

(iii) Include the HRP instruction and education component described in §712.17 of this part.

(2) Approve the temporary removal and the reinstatement after temporary removal of an HRP-certified individual if the removal was based on a nonsecurity concern and the HRP-certified individual continues to meet the certification requirements and notify the HRP certifying official of these actions.

(c) The Deputy Administrator for Defense Programs, NNSA must:

(1) Provide advice and assistance to the Chief Health, Safety and Security Officer, regarding policies, standards, and guidance for all nuclear explosive duty requirements; and

(2) Be responsible for implementation of all nuclear explosive duty safety requirements.

(d) The DOE Deputy Secretary, based on a recommendation of the Chief Health, Safety and Security Officer, makes the final decision for any appeal of denial or revocation of certification or recertification from HRP.

(e) The Director, Office of Policy, is responsible for HRP policy and must:

(1) Ensure consistency of the HRP throughout the DOE and NNSA;

(2) Review and comment on all HRP implementation plans to ensure consistency with policy; and

(3) Provide policies and guidance, including instructional materials, to NNSA and non-NNSA field elements concerning the HRP, as appropriate.

(f) The Manager must:

(1) Review and approve the HRP implementation plan for sites/facilities under their cognizance and forward the plan to the Director, Office of Policy; and

(2) Ensure that the HRP is implemented at the sites/facilities under their cognizance.

(g) The HRP certifying official must:

(1) Approve placement, certification, reinstatement, and recertification of individuals into HRP positions; for unresolved temporary removals, follow the process in §712.19(c)(5);

(2) Ensure that instructional requirements are implemented;

(3) Immediately notify (for the purpose of limiting access) the appropriate HRP management official of a personnel security action that results in the suspension of access authorization; and

(4) Ensure that the supervisory review, medical assessment, and management evaluation, including drug and alcohol testing, are conducted on an annual basis (not to exceed 12 months).

(h) Individuals assigned to HRP duties must:

(1) Execute HRP releases, acknowledgments, and waivers to facilitate the collection and dissemination of information, the performance of drug and alcohol testing, and medical examinations;

(2) Notify the Designated Physician, the Designated Psychologist, or the SOMD immediately of a physical or mental condition requiring medication or treatment;

(3) Provide full, frank, and truthful answers to relevant and material questions, and when requested, furnish, or authorize others to furnish, information that DOE deems pertinent to reach a decision regarding HRP certification or recertification;

(4) Report any observed or reported behavior or condition of another HRP-certified individual that could indicate a reliability concern, including those behaviors and conditions listed in §712.13(c), to a supervisor, the Designated Physician, the Designated Psychologist, the SOMD, or the HRP management official; and

(5) Report to a supervisor, the Designated Physician, the Designated Psychologist, the SOMD, or the HRP management official, any behavior or condition, including those listed in §712.13(c), that may affect his or her ability to perform HRP duties.

[69 FR 3223, Jan. 23, 2004, as amended at 71 FR 68731, Nov. 28, 2006]

361

§ 712.13                    10 CFR Ch. III (1–1–07 Edition)

§ 712.13  Supervisory review.

(a) The supervisor must ensure that each HRP candidate and each individual occupying an HRP position but not yet HRP certified, executes the appropriate HRP releases, acknowledgments, and waivers. If these documents are not executed:

(1) The request for HRP certification may not be further processed until these requirements are completed; and

(2) The individual is immediately removed from the position.

(b) Each supervisor of HRP-certified personnel must conduct an annual review of each HRP-certified individual during which the supervisor must evaluate information (including security concerns) relevant to the individual's suitability to perform HRP tasks in a reliable and safe manner.

(c) The supervisor must report any concerns resulting from his or her review to the appropriate HRP management official. Types of behavior and conditions that would indicate a concern include, but are not limited to:

(1) Psychological or physical disorders that impair performance of assigned duties;

(2) Conduct that warrants referral for a criminal investigation or results in arrest or conviction;

(3) Indications of deceitful or delinquent behavior;

(4) Attempted or threatened destruction of property or life;

(5) Suicidal tendencies or attempted suicide;

(6) Use of illegal drugs or the abuse of legal drugs or other substances;

(7) Alcohol use disorders;

(8) Recurring financial irresponsibility;

(9) Irresponsibility in performing assigned duties;

(10) Inability to deal with stress, or the appearance of being under unusual stress;

(11) Failure to comply with work directives, hostility or aggression toward fellow workers or authority, uncontrolled anger, violation of safety or security procedures, or repeated absenteeism; and

(12) Significant behavioral changes, moodiness, depression, or other evidence of loss of emotional control.

(d) The supervisor must immediately remove an HRP-certified individual from HRP duties, pursuant to § 712.19, and temporarily reassign the individual to a non-HRP position if the supervisor believes the individual has demonstrated a security or safety concern that warrants such removal. If temporary removal is based on a security concern, the HRP management official must immediately notify the applicable DOE personnel security office and the HRP certifying official.

(1) Based on the DOE personnel security office recommendation, the HRP certifying official will make the final decision about whether to reinstate an individual into an HRP position.

(2) If temporary removal is based on a medical concern, the Designated Physician, the Designated Psychologist, or the SOMD must immediately recommend the medical removal or medical restriction in writing to the appropriate HRP management official, who will make the final determination in temporary removal actions and immediately notify the appropriate HRP certifying official.

(e) The supervisor must immediately remove from HRP duties any Federal employee who does not obtain HRP recertification. The supervisor may reassign the individual or realign the individual's current duties. If these actions are not feasible, the supervisor must contact the appropriate personnel office for guidance.

(f) The supervisor who has been informed by the breath alcohol technician that an HRP-certified individual's confirmatory breath alcohol test result is at or above an alcohol concentration of 0.02 percent shall send the individual home and not allow that individual to perform HRP duties for 24 hours, and inform the HRP management official of this action.

§ 712.14  Medical assessment.

(a) Purpose. The HRP medical assessment is performed to evaluate whether an HRP candidate or an HRP-certified individual:

(1) Represents a security concern; or

(2) Has a condition that may prevent the individual from performing HRP duties in a reliable and safe manner.

Department of Energ

(b) When performe assessment is perfo HRP candidates and pying HRP positions received HRP certifi ical assessment is p for HRP-certified in often as required by t

(2) The Designate other examiners wor rection of the Desi also will conduct an e

(i) If an HRP-certi quests an evaluation or

(ii) If an HRP-cert referred by managem tion.

(c) Process. The D cian, under the su SOMD, is responsible assessment of HRP HRP-certified indiv forming this respons ignated Physician or integrate the medi available testing resu evaluations, any ps tions, a review of cu use, and any other i tion. This informatio mine if a reliability, s concern exists and if medically qualified f signed duties. If a se identified, the Design SOMD must immedi HRP management offi the applicable DOE p office and appropriate official.

(d) Evaluation. The D cian, with the assista ignated Psychologist, the existence or natu following:

(1) Physical or me such as a lack of visu tive color vision, in musculoskeletal defor romuscular impairmen

(2) Mental/personali behavioral problems, i and other substance described in the Diag tical Manual of Mental

(3) Use of illegal dru legal drugs or other identified by self-repor

(b) *When performed.* (1) The medical assessment is performed initially on HRP candidates and individuals occupying HRP positions who have not yet received HRP certification. The medical assessment is performed annually for HRP-certified individuals, or more often as required by the SOMD.

(2) The Designated Physician and other examiners working under the direction of the Designated Physician also will conduct an evaluation:

(i) If an HRP-certified individual requests an evaluation (*i.e.,* self-referral); or

(ii) If an HRP-certified individual is referred by management for an evaluation.

(c) *Process.* The Designated Physician, under the supervision of the SOMD, is responsible for the medical assessment of HRP candidates and HRP-certified individuals. In performing this responsibility, the Designated Physician or the SOMD must integrate the medical evaluations, available testing results, psychological evaluations, any psychiatric evaluations, a review of current legal drug use, and any other relevant information. This information is used to determine if a reliability, safety, or security concern exists and if the individual is medically qualified for his or her assigned duties. If a security concern is identified, the Designated Physician or SOMD must immediately notify the HRP management official, who notifies the applicable DOE personnel security office and appropriate HRP certifying official.

(d) *Evaluation.* The Designated Physician, with the assistance of the Designated Psychologist, must determine the existence or nature of any of the following:

(1) Physical or medical disabilities, such as a lack of visual acuity, defective color vision, impaired hearing, musculoskeletal deformities, and neuromuscular impairment;

(2) Mental/personality disorders or behavioral problems, including alcohol and other substance use disorders, as described in the *Diagnostic and Statistical Manual of Mental Disorders;*

(3) Use of illegal drugs or the abuse of legal drugs or other substances, as identified by self-reporting or by med-

ical or psychological evaluation or testing;

(4) Threat of suicide, homicide, or physical harm; or

(5) Medical conditions such as cardiovascular disease, endocrine disease, cerebrovascular or other neurologic disease, or the use of drugs for the treatment of conditions that may adversely affect the judgment or ability of an individual to perform assigned duties in a reliable and safe manner.

(e) *Job task analysis.* Before the initial or annual medical assessment and psychological evaluation, employers must provide, to both the Designated Physician and Designated Psychologist, a job task analysis for each HRP candidate or HRP-certified individual. Medical assessments and psychological evaluations may not be performed if a job task analysis has not been provided.

(f) *Psychological evaluations.* Psychological evaluations must be conducted:

(1) For initial HRP certification. This psychological evaluation consists of a psychological assessment (test), approved by the Director, Office of Health and Safety or his or her designee, and a semi-structured interview.

(2) For recertification. This psychological evaluation consists of a semi-structured interview. A psychological assessment (test) may also be conducted as warranted.

(3) Every third year. The medical assessment for recertification must include a psychological assessment (test) approved by the Director, Office of Health and Safety or his or her designee. This requirement can be implemented over a three-year period for individuals who are currently in an HRP position.

(4) When additional psychological or psychiatric evaluations are required by the SOMD to resolve any concerns.

(g) *Return to work after sick leave.* HRP-certified individuals who have been on sick leave for five or more consecutive days, or an equivalent time period for those individuals on an alternative work schedule, must report in person to the Designated Physician, the Designated Psychologist, or the SOMD before being allowed to return to normal duties. The Designated Physician, the Designated Psychologist, or

363

the SOMD must provide a written recommendation to the appropriate HRP supervisor regarding the individual's return to work. An HRP-certified individual also may be required to report to the Designated Physician, the Designated Psychologist, or the SOMD for written recommendation to return to normal duties after any period of sick leave.

(h) *Temporary removal or restrictions.* The Designated Physician, the Designated Psychologist, or the SOMD may recommend temporary removal of an individual from an HRP position or restrictions on an individual's work in an HRP position if a medical condition or circumstance develops that affects the individual's ability to perform assigned job duties. The Designated Physician, the Designated Psychologist, or the SOMD must immediately recommend medical removal or medical restrictions in writing to the appropriate HRP management official. If the HRP management official concurs, he or she will then notify the appropriate HRP certifying official. To reinstate or remove such restrictions, the Designated Physician, the Designated Psychologist, or the SOMD must make written recommendation to the HRP management official for concurrence. The HRP management official will then notify the appropriate HRP certifying official.

(i) *Medical evaluation after rehabilitation.* (1) Individuals who request reinstatement in the HRP following rehabilitative treatment for alcohol use disorder, use of illegal drugs, or the abuse of legal drugs or other substances, must undergo an evaluation, as prescribed by the SOMD, to ensure continued rehabilitation and adequate capability to perform their job duties.

(2) The HRP certifying official may reinstate HRP certification of an individual who successfully completes an SOMD-approved drug or alcohol rehabilitation program. Recertification is based on the SOMD's follow-up evaluation and recommendation. The individual is also subject to unannounced follow-up tests for illegal drugs or alcohol and relevant counseling for three years.

(j) *Medication and treatment.* HRP-certified individuals are required to imme-

diately report to the Designated Physician, the Designated Psychologist, or the SOMD any physical or mental condition requiring medication or treatment. The Designated Physician, the Designated Psychologist, or the SOMD determines if temporary removal of the individual from HRP duties is required and follows the procedures pursuant to § 712.14(h).

[69 FR 3223, Jan. 23, 2004, as amended at 71 FR 68731, Nov. 28, 2006]

§ 712.15  Management evaluation.

(a) *Evaluation components.* An evaluation by the HRP management official is required before an individual can be considered for initial certification or recertification in the HRP. This evaluation must be based on a careful review of the results of the supervisory review, medical assessment, and drug and alcohol testing. If a safety concern is identified, the HRP management official must ensure the supervisor to temporarily reassign the individual to non-HRP duties and forward this information to the HRP certifying official. If the management evaluation reveals a security concern, the HRP management official must notify the applicable DOE personnel security office.

(b) *Drug testing.* All HRP candidates and HRP-certified individuals are subject to testing for the use of illegal drugs, as required by this part. Testing must be conducted in accordance with 10 CFR part 707, the workplace substance abuse program for DOE contractor employees, and DOE Order 3792.3, "Drug-Free Federal Workplace Testing Implementation Program," for DOE employees. The program must include an initial drug test, random drug tests at least once every 12 months from the previous test, and tests of HRP-certified individuals if they are involved in an incident, unsafe practice, occurrence, or based on reasonable suspicion. Failure to appear for unannounced testing within two hours of notification constitutes a refusal to submit to a test. Sites may establish a shorter time period between notification and testing but may not exceed the two-hour requirement. An HRP-certified individual who, based on a drug test, has been determined to use

illegal drugs must imm
moved from HRP dutie
sonnel security must b
diately.

(c) *Alcohol testing.*
didates and HRP-certi
are subject to testing f
cohol, as required by t
cohol testing program
a minimum, an initi
prior to performing 
random alcohol tests
every 12 months from t
and tests of HRP-cert
if they are involved in 
safe practice, occurren
reasonable suspicion. A
individual who has bee
have an alcohol conce
percent or greater sha
and not allowed to per
for 24 hours.

(1) Breath alcohol 
conducted by a certifie
technician and confor
procedures (49 CFR pa
for Transportation 
and Alcohol Testing
parts J through N) for
tial-grade breath ana
proved for 0.02/0.04 cut
conforms to the DOT
tions and the most re
Products List" issued b

(2) An individual req
DOT alcohol testing i
regulations of the DOT
vidual's blood alcoho
DOT standards, the 
ployer may take app
nary action.

(3) The following c
fusal to submit to a t
considered as a posit
centration test of 0.0
requires the individu
and not allowed to per
for 24 hours:

(i) Failure to appear
testing within two h
tion (or established 
the specific site);

(ii) Failure to prov
volume of breath in tw
out a valid medical ex

(iii) Engaging in con
obstructs the testing p
failure to cooperate wi

7 Edition)

ed Physi-
ogist, or
ntal con-
or treat-
cian, the
ie SOMD
ral of the
required
suant to

ided at 71

on.

i evalua-
i official
il can be
ation or
his eval-
reful re-
ervisory
and drug
concern
ment of-
visor to
idual to
ds infor-
official.
. reveals
manage-
applica-
ce.
ndidates
are sub-
f illegal
Testing
ice with
ice sub-
DE con-
) Order
rkplace
im,'' for
nust in-
om drug
months
tests of
hey are
fe prac-
reason-
ear for
o hours
fusal to
ablish a
iotifica-
exceed
i HRP-
d on a
. to use

illegal drugs must immediately be removed from HRP duties, and DOE personnel security must be notified immediately.

(c) *Alcohol testing.* All HRP candidates and HRP-certified individuals are subject to testing for the use of alcohol, as required by this part. The alcohol testing program must include, as a minimum, an initial alcohol test prior to performing HRP duties and random alcohol tests at least once every 12 months from the previous test, and tests of HRP-certified individuals if they are involved in an incident, unsafe practice, occurrence, or based on reasonable suspicion. An HRP-certified individual who has been determined to have an alcohol concentration of 0.02 percent or greater shall be sent home and not allowed to perform HRP duties for 24 hours.

(1) Breath alcohol testing must be conducted by a certified breath alcohol technician and conform to the DOT procedures (49 CFR part 40, Procedures for Transportation Workplace Drug and Alcohol Testing Programs, subparts J through N) for use of an evidential-grade breath analysis device approved for 0.02/0.04 cutoff levels, which conforms to the DOT model specifications and the most recent ''Conforming Products List'' issued by NHTSA.

(2) An individual required to undergo DOT alcohol testing is subject to the regulations of the DOT. If such an individual's blood alcohol level exceeds DOT standards, the individual's employer may take appropriate disciplinary action.

(3) The following constitutes a refusal to submit to a test and shall be considered as a positive alcohol concentration test of 0.02 percent, which requires the individual be sent home and not allowed to perform HRP duties for 24 hours:

(i) Failure to appear for unannounced testing within two hours of notification (or established shorter time for the specific site);

(ii) Failure to provide an adequate volume of breath in two attempts without a valid medical excuse; and

(iii) Engaging in conduct that clearly obstructs the testing process, including failure to cooperate with reasonable instructions provided by the testing technician.

(d) *Occurrence testing.* (1) When an HRP-certified individual is involved in, or associated with, an occurrence requiring immediate reporting to the DOE, the following procedures must be implemented:

(i) Testing for the use of illegal drugs in accordance with the provisions of the DOE policies implementing Executive Order 12564, and 10 CFR part 707 or DOE Order 3792.3, which establish workplace substance abuse programs for contractor and DOE employees, respectively.

(ii) Testing for use of alcohol in accordance with this section.

(2) Testing must be performed as soon as possible after an occurrence that requires immediate notification or reporting.

(3) The supervisor must remove an HRP-certified individual from HRP duties if the individual refuses to undergo the testing required by this section.

(e) *Testing for reasonable suspicion.* (1) If the behavior of an individual in an HRP position creates the basis for reasonable suspicion of the use of an illegal drug or alcohol, that individual must be tested if two or more supervisory or management officials, at least one of whom is in the direct chain of supervision of the individual or is the Designated Physician, the Designated Psychologist, or the SOMD, agree that such testing is appropriate.

(2) Reasonable suspicion must be based on an articulable belief, drawn from facts and reasonable inferences from those particular facts, that an HRP-certified individual is in possession of, or under the influence of, an illegal drug or alcohol. Such a belief may be based on, among other things:

(i) Observable phenomena, such as direct observation of the use or possession of illegal drugs or alcohol, or the physical symptoms of being under the influence of drugs or alcohol;

(ii) A pattern of abnormal conduct or erratic behavior;

(iii) Information provided by a reliable and credible source that is independently corroborated; or

(iv) Detection of alcohol odor on the breath.

§ 712.20

may be exempt from access by the employee under the Privacy Act or the Freedom of Information Act.

(f) If an individual is directed by the Manager to take specified actions to resolve HRP concerns, he or she must be reevaluated by the HRP management official and HRP certifying official after those actions have been completed. After considering the HRP management and HRP certifying officials' report and recommendation, the Manager must direct either:

(1) Reinstatement of the individual; or

(2) Revocation of the individual's HRP certification.

(g) *Notification of Manager's initial decision.* The Manager must send by certified mail (return receipt requested) a written decision, including rationale, to the HRP-certified individual whose certification is revoked. The Manager's decision must be accompanied by notification to the individual, in writing, of the procedures pertaining to reconsideration or a hearing on the Manager's decision.

§ 712.20   Request for reconsideration or certification review hearing.

(a) An HRP-certified individual who receives notification of the Manager's decision to revoke his or her HRP certification may choose one of the following options:

(1) Take no action;

(2) Submit a written request to the Manager for reconsideration of the decision to revoke certification. The request must include the individual's response to the information that gave rise to the concern. The request must be sent by certified mail to the Manager within 20 working days after the individual received notice of the Manager's decision; or

(3) Submit a written request to the Manager for a certification review hearing. The request for a hearing must be sent by certified mail to the Manager within 20 working days after the individual receives notice of the Manager's decision.

(b) If an individual requests reconsideration by the Manager but not a certification review hearing, the Manager must, within 20 working days after receipt of the individual's request, send by certified mail (return receipt requested) a final decision to the individual. This final decision about certification is based on the individual's response and other relevant information available to the Manager.

(c) If an individual requests a certification review hearing, the Manager must forward the request to the Office of Hearings and Appeals.

§ 712.21   Office of Hearings and Appeals.

(a) The certification review hearing is conducted by the Office of Hearings and Appeals.

(b) The hearing officer must have a DOE "Q" access authorization when hearing cases involving HRP duties.

(c) An individual who requests a certification review hearing has the right to appear personally before the hearing officer; to present evidence in his or her own behalf, through witnesses or by documents, or by both; and to be accompanied and represented at the hearing by counsel or any other person of the individual's choosing and at the individual's own expense.

(d) In conducting the proceedings, the hearing officer must:

(1) Receive all relevant and material information relating to the individual's fitness for HRP duties through witnesses or documentation;

(2) Ensure that the individual is permitted to offer information in his or her behalf; to call, examine, and cross-examine witnesses and other persons who have made written or oral statements, and to present and examine documentary evidence;

(3) Require the testimony of the individual and all witnesses be given under oath or affirmation; and

(4) Ensure that a transcript of the certification review proceedings is made.

§ 712.22   Hearing officer's report and recommendation.

Within 30 calendar days of the receipt of the hearing transcript by the hearing officer or the closing of the record, whichever is later, the hearing officer must forward written findings, a supporting statement of reasons, and recommendation regarding the individual's eligibility for recertification in

368

Department of Energy

the HRP position to the [...]
Safety and Security Offic[...]
ing officer's report and [...]
tion must be accompanie[...]
the record of the proc[...]
Chief Health, Safety and [...]
cer shall forward to the [...]
Secretary a recommenda[...]
recertify or revoke the ce[...]
an individual in the HRP.

[69 FR 3223, Jan. 23, 2004, as [...]
FR 68731, Nov. 28, 2006]

§ 712.23   Final decision by [...]
   Secretary.

Within 20 working days [...]
of the Chief Health, Safe[...]
rity Officer's recomme[...]
Deputy Secretary should [...]
written decision. A copy [...]
sion must be sent by certi[...]
turn receipt requested) to [...]
and to the individual acco[...]
copy of the hearing office[...]
the transcript of the cer[...]
view proceedings.

[69 FR 3223, Jan. 23, 2004, as [...]
FR 68731, Nov. 28, 2006]

Subpart B—Medical [...]

§ 712.30   Applicability.

This subpart establish[...]
and procedures for conduc[...]
assessments of DOE an[...]
tractor individuals in HRF[...]

§ 712.31   Purpose.

The standards and pr[...]
forth in this subpart are [...]
DOE to:

(a) Identify the presence [...]
tal/personality disorders, [...]
behavioral characteristic[...]
tions that present or a[...]
present an unacceptable i[...]
reliability;

(b) Facilitate the early [...]
treatment of disease or [...]
and foster accommodatio[...]
bilitation;

(c) Determine what f[...]
HRP-certified individual [...]
to perform and to facilitat[...]
placement of individuals; a[...]

(d) Provide for contin[...]
toring of the health statu[...]
uals to facilitate early d[...]

receipt re-
to the indi-
about cer-
individual's
nt informa-
er.

sts a certifi-
ie Manager
o the Office

s and Ap-

iew hearing
of Hearings

iust have a
ation when
' duties.

lests a cer-
is the right
the hearing
e in his or
itnesses or
ad to be ac-
it the hear-
r person of
d at the in-

roceedings,

d material
ndividual's
ough wit-

tual is per-
in his or
and cross-
er persons
oral state-
amine doc-

of the
iven under

ipt of the
edings is

eport and

he receipt
the hear-
he record,
ng officer
gs, a sup-
, and rec-
individ-
cation in

the HRP position to the Chief Health, Safety and Security Officer. The hearing officer's report and recommendation must be accompanied by a copy of the record of the proceedings. The Chief Health, Safety and Security Officer shall forward to the DOE Deputy Secretary a recommendation to either recertify or revoke the certification of an individual in the HRP.

[69 FR 3223, Jan. 23, 2004, as amended at 71 FR 68731, Nov. 28, 2006]

### §712.23 Final decision by DOE Deputy Secretary.

Within 20 working days of the receipt of the Chief Health, Safety and Security Officer's recommendation, the Deputy Secretary should issue a final written decision. A copy of this decision must be sent by certified mail (return receipt requested) to the Manager and to the individual accompanied by a copy of the hearing officer's report and the transcript of the certification review proceedings.

[69 FR 3223, Jan. 23, 2004, as amended at 71 FR 68731, Nov. 28, 2006]

## Subpart B—Medical Standards

### §712.30 Applicability.

This subpart establishes standards and procedures for conducting medical assessments of DOE and DOE contractor individuals in HRP positions.

### §712.31 Purpose.

The standards and procedures set forth in this subpart are necessary for DOE to:

(a) Identify the presence of any mental/personality disorders, physical, or behavioral characteristics or conditions that present or are likely to present an unacceptable impairment in reliability;

(b) Facilitate the early diagnosis and treatment of disease or impairment and foster accommodation and rehabilitation;

(c) Determine what functions an HRP-certified individual may be able to perform and to facilitate the proper placement of individuals; and

(d) Provide for continuing monitoring of the health status of individuals to facilitate early detection and correction of adverse health effects, trends, or patterns.

### §712.32 Designated Physician.

(a) The Designated Physician must be qualified to provide professional expertise in the area of occupational medicine as it relates to the HRP.

(b) The Designated Physician must:

(1) Be a graduate of an accredited school of medicine or osteopathy;

(2) Have a valid, unrestricted state license to practice medicine in the state where HRP medical assessments occur;

(3) Have met the applicable HRP instruction requirements; and

(4) Be eligible for the appropriate DOE access authorization.

(c) The Designated Physician is responsible for the medical assessments of HRP candidates and HRP-certified individuals, including determining which components of the medical assessments may be performed by other qualified personnel. Although a portion of the assessment may be performed by another physician, physician's assistant, or nurse practitioner, the Designated Physician remains responsible for:

(1) Supervising the evaluation process;

(2) Interpreting the results of evaluations;

(3) Documenting medical conditions or issues that may disqualify an individual from the HRP;

(4) Providing medical assessment information to the Designated Psychologist to assist in determining psychological fitness;

(5) Determining, in conjunction with DOE if appropriate, the location and date of the next required medical assessment; and

(6) Signing a recommendation about the medical fitness of an individual for certification or recertification.

(d) The Designated Physician must immediately report to the SOMD any of the following about himself or herself:

(1) Initiation of an adverse action by any state medical licensing board or any other professional licensing board;

(2) Initiation of an adverse action by any Federal regulatory board since the last designation;

(3) The withdrawal of the privilege to practice by any institution;

(4) Being named a defendant in any criminal proceedings (felony or misdemeanor) since the last designation;

(5) Being evaluated or treated for alcohol use disorder or drug dependency or abuse since the last designation; or

(6) Occurrence, since the last designation, of a physical, mental/personality disorder, or health condition that might affect his or her ability to perform professional duties.

### § 712.33  Designated Psychologist.

(a) The Designated Psychologist reports to the SOMD and determines the psychological fitness of an individual to participate in the HRP. The results of this evaluation may be provided only to the Designated Physician or the SOMD.

(b) The Designated Psychologist must:

(1) Hold a doctoral degree from a clinical psychology program that includes a one-year clinical internship approved by the American Psychological Association or an equivalent program;

(2) Have accumulated a minimum of three years postdoctoral clinical experience with a major emphasis in psychological assessment and testing;

(3) Have a valid, unrestricted state license to practice clinical psychology in the state where HRP medical assessments occur;

(4) Have met the applicable HRP instruction requirements; and

(5) Be eligible for the appropriate DOE access authorization.

(c) The Designated Psychologist is responsible for all psychological evaluations of HRP candidates, HRP-certified individuals, and others as directed by the SOMD. Although a portion of the psychological evaluation may be performed by another psychologist, the Designated Psychologist must:

(1) Supervise the psychological evaluation process and designate which components may be performed by other qualified personnel;

(2) Upon request of management, assess the psychological fitness of HRP candidates and HRP-certified individuals for HRP duties, including specific

work settings, and recommend referrals as indicated; and

(3) Make referrals for psychiatric, psychological, substance abuse, or personal or family problems, and monitor the progress of individuals so referred.

(d) The Designated Psychologist must immediately report to the SOMD any of the following about himself or herself:

(1) Initiation of an adverse action by any state medical licensing board or any other professional licensing board;

(2) Initiation of an adverse action by any Federal regulatory board since the last designation;

(3) The withdrawal of the privilege to practice by any institution;

(4) Being named a defendant in any criminal proceeding (felony or misdemeanor) since the last designation;

(5) Being evaluated or treated for alcohol use disorder or drug dependency or abuse since the last designation; or

(6) Occurrence since the last designation of a physical, mental/personality disorder, or health condition that might affect his or her ability to perform professional duties.

### § 712.34  Site Occupational Medical Director.

(a) The SOMD must nominate a physician to serve as the Designated Physician and a clinical psychologist to serve as the Designated Psychologist. The nominations must be sent through the Manager to the Director, Office of Health and Safety or his or her designee. Each nomination must describe the nominee's relevant training, experience, and licensure, and include a curriculum vitae and a copy of the nominee's current state or district license.

(b) The SOMD must submit a renomination report biennially through the Manager to the Director, Office of Health and Safety or his or her designee. This report must be submitted at least 60 days before the second anniversary of the initial designation or of the last redesignation, whichever applies. The report must include:

(1) A statement evaluating the performance of the Designated Physician and Designated Psychologist during the previous designation period; and

(2) A copy of the vali[d] state or district licens[e] ignated Physician and D[esignated Psy-]chologist.

(c) The SOMD must [report annu-]ally, to the Director, O[ffice of Health] and Safety or his or [her designee] through the Manager, a [report] summarizing HRP me[dical activity] during the previous ye[ar. The report] must comply with any [guidance] specifying the form or [content of the] annual report.

(d) The SOMD must i[mmediately report] reports of performance i[ssues about] a Designated Physician [or Designated] Psychologist, and the S[OMD may sus-]pend either official fro[m his or her] duties. If the SOMD sus[pends an of-]ficial, the SOMD must [notify the Di-]rector, Office of Health [and Safety or] his or her designee an[d provide sup-]porting documentation [justifying] the action.

[69 FR 3223, Jan. 23, 2004, [as amended at 71] FR 68731, Nov. 28, 2006]

### § 712.35  Director, Office [of Health and] Safety.

The Director, Office [of Health and] Safety or his or her desi[gnee must:]

(a) Develop policies, [procedures, and] guidance for the medica[l portion of the] HRP, including the psyc[hological test-]ing inventory to be used [;]

(b) Review the qualifi[cations of Des-]ignated Physicians an[d Designated] Psychologists, and co[ncur or non-]concur with their design[ation, provid-]ing a statement to the M[anager and an] informational copy to th[e SOMD;]

(c) Provide technical [direction on] medical aspects of the [HRP to HRP] elements and DOE contr[actors; and]

[69 FR 3223, Jan. 23, 2004, [as amended at 71] FR 68732, Nov. 28, 2006]

### § 712.36  Medical assessm[ent.]

(a) The Designated Ph[ysician, under] the supervision of the S[OMD, is respon-]sible for the medical [assessment of] HRP candidates and HR[P-certified in-]dividuals. In carrying o[ut this respon-]sibility, the Designated [Physician and] the SOMD must integra[te medical] evaluations, psychologic[al evaluations,] psychiatric evaluations, [and all other] relevant information to[ determine]

**Department of Energy**

lend refer-

sychiatric,
se, or per-
1d monitor
o referred.
ychologist
the SOMD
himself or

action by
board or
ing board;
action by
l since the

rivilege to

nt in any
· or mis-
rnation;
ted for al-
ependency
nation; or
t designa-
ersonality
ion that
ty to per-

**edical Di-**

te a phy-
ated Phy-
ologist to
chologist.
t through
Office of
her des-
; describe
ng, expe-
nclude a
y of the
istrict li-

a renomi-
ough the
Office of
her des-
ubmitted
ond anni-
ion or of
lever ap-

the per-
hysician
; during
l; and

(2) A copy of the valid, unrestricted state or district license of the Designated Physician and Designated Psychologist.

(c) The SOMD must submit, annually, to the Director, Office of Health and Safety or his or her designee through the Manager, a written report summarizing HRP medical activity during the previous year. The SOMD must comply with any DOE directives specifying the form or contents of the annual report.

(d) The SOMD must investigate any reports of performance issues regarding a Designated Physician or Designated Psychologist, and the SOMD may suspend either official from HRP-related duties. If the SOMD suspends either official, the SOMD must notify the Director, Office of Health and Safety or his or her designee and provide supporting documentation and reasons for the action.

[69 FR 3223, Jan. 23, 2004, as amended at 71 FR 68731, Nov. 28, 2006]

§ 712.35  Director, Office of Health and Safety.

The Director, Office of Health and Safety or his or her designee must:

(a) Develop policies, standards, and guidance for the medical aspects of the HRP, including the psychological testing inventory to be used;

(b) Review the qualifications of Designated Physicians and Designated Psychologists, and concur or nonconcur with their designations by sending a statement to the Manager and an informational copy to the SOMD; and

(c) Provide technical assistance on medical aspects of the HRP to all DOE elements and DOE contractors.

[69 FR 3223, Jan. 23, 2004, as amended at 71 FR 68732, Nov. 28, 2006]

§ 712.36  Medical assessment process.

(a) The Designated Physician, under the supervision of the SOMD, is responsible for the medical assessment of HRP candidates and HRP-certified individuals. In carrying out this responsibility, the Designated Physician or the SOMD must integrate the medical evaluations, psychological evaluations, psychiatric evaluations, and any other relevant information to determine an individual's overall medical qualification for assigned duties.

(b) Employers must provide a job task analysis for those individuals involved in HRP duties to both the Designated Physician and the Designated Psychologist before each medical assessment and psychological evaluation. HRP medical assessments and psychological evaluations may not be performed if a job task analysis has not been provided.

(c) The medical process by the Designated Physician includes:

(1) Medical assessments for initial certification, annual recertification, and evaluations for reinstatement following temporary removal from the HRP;

(2) Evaluations resulting from self-referrals and referrals by management;

(3) Routine medical contacts and occupational and nonoccupational health counseling sessions; and

(4) Review of current legal drug use.

(d) Psychological evaluations must be conducted:

(1) For initial certification. This psychological evaluation consists of a generally accepted psychological assessment (test) approved by the Director, Office of Health and Safety or his or her designee and a semi-structured interview.

(2) For recertification. This psychological evaluation consists of a semi-structured interview, which is conducted annually at the time of the medical examination.

(3) Every third year. The medical assessment for recertification must include a generally accepted psychological assessment (test) approved by the Director, Office of Health and Safety or his or her designee.

(4) When the SOMD determines that additional psychological or psychiatric evaluations are required to resolve HRP concerns as listed in § 712.13(c).

(e) Following absences requiring return-to-work evaluations under applicable DOE directives, the Designated Physician, the Designated Psychologist, or the SOMD must determine whether a psychological evaluation is necessary.

(f) Except as provided in paragraph (g) of this section, the Designated Physician must forward the completed

371

**§ 712.37**

medical assessment of an HRP candidate and HRP-certified individual to the SOMD, who must make a recommendation, based on the assessment, to the individual's HRP management official. If the Designated Physician determines that a currently certified individual no longer meets the HRP requirements, the Designated Physician must immediately, orally, inform the HRP management official. A written explanation must follow within 24 hours.

(g) The Designated Physician, the Designated Psychologist, or the SOMD may make a medical recommendation for return to work and work accommodations for HRP-certified individuals.

(h) The following documentation is required after treatment of an individual for any disqualifying condition:

(1) A summary of the diagnosis, treatment, current status, and prognosis to be furnished by the treatment provider to the Designated Physician;

(2) The medical opinion of the Designated Physician advising the individual's supervisor whether the individual is able to return to work in either an HRP or non-HRP capacity; and

(3) Any periodic monitoring plan, approved by the Designated Physician or the Designated Psychologist and the SOMD, used to evaluate the reliability of the individual.

(i) If the disqualifying condition was of a security concern, the appropriate procedure described in 10 CFR part 710, subpart A, applies.

[69 FR 3223, Jan. 23, 2004, as amended at 71 FR 68783, Nov. 28, 2006]

**§ 712.37 Evaluation for hallucinogen use.**

If DOE determines that an HRP candidate or HRP-certified individual has used any hallucinogen, the individual is not eligible for certification or recertification unless:

(a) Five years have passed since the last use of the hallucinogen;

(b) There is no evidence of any flashback within the last five years from the previous hallucinogen use; and

(c) The individual has a record of acceptable job performance and observed behavior.

**10 CFR Ch. III (1–1–07 Edition)**

**§ 712.38 Maintenance of medical records.**

(a) The medical records of HRP candidates and HRP-certified individuals must be maintained in accordance with the Privacy Act, 5 U.S.C. 552a, and DOE implementing regulations in 10 CFR part 1008; the Department of Labor's regulations on access to individual exposure and medical records, 29 CFR 1910.1020; and applicable DOE directives. DOE contractors also may be subject to section 503 of the Rehabilitation Act, 29 U.S.C. 793, and its implementing rules, including confidentiality provisions in 41 CFR 60–741.23 (d).

(b) The psychological record of HRP candidates and HRP-certified individuals is a component of the medical record. The psychological record must:

(1) Contain any clinical reports, test protocols and data, notes of individual contacts and correspondence, and other information pertaining to an individual's contact with a psychologist;

(2) Be stored in a secure location in the custody of the Designated Psychologist; and

(3) Be kept separate from other medical record documents, with access limited to the SOMD and the Designated Physician.

## PART 715—DEFINITION OF NON—RECOURSE PROJECT—FINANCED

Sec.
715.1 Purpose and scope.
715.2 Definitions.
715.3 Definition of "Nonrecourse Project-Financed."

AUTHORITY: 42 U.S.C. 7651o(a)(2)(B); 42 U.S.C. 7254.

SOURCE: 56 FR 55064, Oct. 24, 1991, unless otherwise noted.

**§ 715.1 Purpose and scope.**

This part sets forth the definition of "nonrecourse project-financed" as that term is used to define "new independent power production facility," in section 416(a)(2)(B) of the Clean Air Act Amendments of 1990, 42 U.S.C. 7651o(a)(2)(B). This definition is for purposes of section 416(a)(2)(B) only. It is not intended to alter or impact the

**Department of Energy**

tax treatment of any facility owner under the Inter Code and regulations.

**§ 715.2 Definitions.**

As used in this subpart—
*Act* means the Clean Air ments of 1990, 104 Stat. 2399
*Facility* means a "new power production facility term is used in the Ac 7651o(a)(2).

**§ 715.3 Definition of "Project-Financed".**

*Nonrecourse project-fina* when being financed by an debt is secured by the ass and the revenues received ity being financed includ limited to, part or all of received under one or more for the sale of the electric the facility, and which nei tric utility with a retail s tory, nor a public utility a section 201(e) of the Federa as amended, 16 U.S.C. 824( its facilities are financed credit, is obligated to repa in part. A commitment t equity or the contribution a facility by an electric not be considered an oblig utility to repay the debt The existence of limited commitments to pay for c indemnity provisions, or undertakings or assuranc cility's owners or other pr pants will not disqualify a being "nonrecourse proje as long as, at the time of for the facility, the borr gated to make repayment debt from the revenues the facility, rather than sources of funds. Projects percent equity financed a sidered "nonrecourse proj for purposes of section 416

## PART 719—CONTRAC MANAGEMENT REQU

**Subpart A—General P**

Sec.
719.1 What is the purpose of t